**LOONEY et al. v. ELLIOTT, Sheriff, et al.**
**No. 12683.**

Court of Civil Appeals of Texas. Fort Worth.
July 16, 1932.

Rehearing Denied Sept. 24, 1932.

Marvin H. Brown & Son and J. R. Griffin, all of Fort Worth, for appellants.

D. J. Brookreson, of Benjamin, Seay, Seay, Malone & Lipscomb, of Dallas, and Ross, Ross & Alexander, of Fort Worth, for appellees.

DUNKLIN, J.

A judgment was recovered in the Seventeenth judicial district court of Tarrant county by Mrs. Ida M. Looney and her husband, Charles Looney, as plaintiffs, against Ada R. Wilkinson and Henry Lott, defendants, in the sum of $4,871.07, with interest thereon, and for a foreclosure of a mortgage lien on 332.15 acres of land situated in Knox county, Tex., as against Ada R. Wilkinson and Henry Lott and also against Mrs. Ada R. Wilkinson as independent executrix of the estate of Edward Wilkinson, deceased, R. L. Van Zandt, receiver of the Texas State Bank, and James A. Stephens, who were likewise joined as defendants in that suit.

Thereafter, and on August 16, 1930, an order of sale was issued on that judgment directed to the sheriff or any constable of Knox county commanding him to levy upon and sell the land as under execution and apply the proceeds of the sale to the satisfaction of the judgment.

C. R. Elliott, sheriff of Knox county, in whose hands the writ of execution was placed, executed the same by levying upon the land above mentioned and by advertising the same and offering the property for sale at the courthouse door of Knox county on the 6th day of October, 1930, which was the first Tuesday of said month, and by selling the same on that date to Dr. G. H. Beavers for the sum of $2,200; and by executing to Dr. Beavers a deed to the land upon payment by him of the amount of the bid; all of which is shown in the sheriff's return on the order of sale.

The suit now before us was instituted by Mrs. Ida M. Looney, joined by her husband, Charles Looney, to set aside the sale so made. Dr. G. H. Beavers, the purchaser, C. R. Elliott, sheriff, and the United States Fidelity & Guaranty Company, surety on his official bond, were all made defendants in the suit. It was alleged in plaintiffs' petition that the suit was brought for themselves and also for the use and benefit of the defendants in the former suit, to wit, Henry Lott and wife, Emma Lott, Ida M. Looney, Ada R. Wilkinson, as independent executrix of the estate of Edward Wilkinson, deceased, and James A. Stephens.

The grounds upon which an annullment of the sale was sought consisted in allegations, in substance, that the sale was brought about through a fraudulent collusion between the sheriff and Dr. Beavers for the purpose of enabling the latter to purchase the property for an inadequate price and for the purpose of preventing Homer L. Baughman, the attorney and representative of the plaintiffs in the foreclosure suit and who was present at the time of the sale, from bidding on the property in an amount sufficient to satisfy the judgment on which the order of sale was executed.

The petition embodied allegations to the effect that, immediately after Beavers had made the bid of $2,200 for the property, Baughman, as attorney and agent for plaintiffs in the judgment, raised the bid $100, which was the last bid made; notwithstanding which the sheriff announced that the property had been sold to Beavers on his bid of $2,200; that immediately thereafter Baughman told the sheriff that he had made a mistake in saying that Beavers was the last and highest bidder, for he (Baughman) had made the highest bid; that Baughman then insisted that the sheriff reopen the sale in order to give Baughman a chance to raise Beaver's bid and buy the property in for his clients, but his request was refused by the sheriff.

It was further alleged that the reasonable market value of the land so sold was more than $15,000, which was well known to the sheriff at the time of the sale. Other facts and circumstances were alleged in the petition as tending to support the allegation that a collusive conspiracy on the part of the sheriff and Beavers to sell the property to Beavers for an inadequate price and to prevent the purchase thereof by Baughman, as representative of the plaintiffs in the original judgment, for a higher price. Plaintiffs also prayed for a resale of the property under another order of sale to be issued on the former judgment.

Mrs. Ada R. Wilkinson, for herself and as independent executrix of the estate of Edward Wilkinson, deceased, and also Henry Lott and wife, Emma Lott, who were defendants in the former suit, filed pleas of intervention in which they adopted the pleadings of the plaintiffs in the present suit and joined in the prayer for a cancellation or annullment of the sale to Beavers and for a resale of the property under another order of sale.

C. R. Elliott, sheriff, filed an answer which included a general denial, and also specific denials of all the facts and circumstances alleged in the petition to support the plaintiffs' claim of fraudulent collusion, followed by further allegations that the defendant acted in good faith, without favor to any one in the sale of the land, and did all he could to assist Baughman in the sale thereof for the best price obtainable; that he postponed the sale to await the arrival of Baughman, and delayed it until nearly 4 o'clock, which was the limit of the law for the sale of the land; that, after Beavers had submitted the bid of $2,200, the defendant announced that bid and called for a higher bid, and that Baughman, who was present and within hearing thereof, refused to raise the bid and permitted the property to be sold to Beavers, and permitted the crowd present at the sale to disperse without a protest, and at no time did Baughman ask the defendant for the privilege of submitting a further bid. The defendant further alleged that he was not personally interested in the sale to Beavers or in the question whether or not the sale should be set aside.

Dr. G. H. Beavers also filed an answer, consisting of a general demurrer and numerous special exceptions to plaintiffs' petition; a general denial and a special answer containing allegations, in substance, that he had purchased the property for the sum of $2,200, which he had paid and for which a deed had been executed and delivered to him by the sheriff; that his bid of $2,200 was the highest bid offered for the property; that, after said bid was made, and after the sheriff had announced the same and had called for further bids, Baughman, as plaintiffs' agent and attorney, failed and refused to offer any higher bid; and further that the failure of the plaintiffs to submit a higher bid for the property than $2,200 was due to the negligence of their attorney who heard the bid made by Beavers and was given a fair opportunity to raise it, but refused to do so; and further that, by reason of his standing by and permitting the sale to be made to Beavers with full knowledge of the bid offered and accepted and the payment of the price bid by Beavers, plaintiffs are estopped from now asking that the sale be set aside. There were further allegations that $2,200, the amount paid for the property, was its fair cash market value; and that out of the funds realized by the sale the sheriff had deducted his costs and commissions, and remitted the balance to the district clerk of Tarrant county to be applied to the satisfaction of the former judgment rendered in that court. There was a further prayer that, in the event of a resale of the property under an order of the court, the defendant be reimbursed out of the proceeds for the $2,200 which he had paid to the sheriff for the property, together with 6 per cent. interest thereon.

The United States Fidelity & Guaranty Company, surety on the sheriff's bond, also filed an answer embodying a general demurrer and numerous special exceptions to plaintiffs' suit as against it. By the general demurrer it is insisted that there is no statute

of the state which would authorize the plaintiffs to maintain their action against it on the bond, and that the bond does not by its terms inure to the benefit of the plaintiffs; and by special exception it is insisted that the allegations of the plaintiffs' petition show that the wrongs therein complained of against the sheriff were not official acts on his part, but were performed by him in an unofficial capacity, and thereby the surety company was not liable. The answer also contained a general denial and special answer presenting the contention that the alleged acts of the sheriff were unofficial and, for which the surety company was not liable; and further that, since all the parties are before the court and subject to its jurisdiction, and since the sale can be set aside if it was wrongfully made, then plaintiffs have no cause of action for damages resulting from the sale. The surety company further adopted all the allegations contained in the pleadings filed by its codefendant, C. R. Elliott; and further that, if a judgment should be returned against the surety company, it should have a recovery over against Elliott in like amount.

Following are the special issues submitted to the jury with their findings thereon:

"1. Do you find from a preponderance of the evidence that immediately after sheriff Elliott announced that the land in question was sold to Dr. Beavers that Homer Baughman requested the sheriff to reopen the sale and permit him (Baughman) to bid further? Answer: Yes.

"2. What do you find from a preponderance of the evidence to have been the reasonable market value of the land in question on October 7, 1930? Answer: $4,980.00.

"3. Do you find from a preponderance of the evidence that the sale of the property in question was not fairly made by the sheriff? Answer: No.

"4. Do you find from a preponderance of the evidence that the defendant, sheriff Elliott, colluded with the defendant Beavers for the purpose of selling the land in question to the defendant Beavers? Answer: No."

Upon the verdict so returned, a judgment was rendered denying plaintiffs any relief and expressly ratifying and confirming the sale made by the sheriff to the defendant G. H. Beavers. From that judgment the plaintiffs and interveners have prosecuted this appeal.

 Upon the trial appellants objected to issue No. 3 in the court's charge because the court did not define the term "fairly made," as used in that issue, and an assignment of error is presented here to the overruling of that objection. The inquiry in special issue No. 3 as to whether or not the sale of the property was "fairly made" was broad enough to include all the irregularities relied upon

by appellants in their pleadings to show that the sale was not fairly made, and therefore that it should be set aside. In other words, that issue covered that whole cause of action asserted by plaintiffs and interveners. It is a well-settled rule of decisions that, in a trial of a case before a jury on special issues, the submission of an issue which is in the nature of a general charge is reversible error. T. & N. O. Ry. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188. Furthermore, this was a suit in equity to annul the sale, and it is to be governed by the principles and rules applicable to a suit in chancery. According to those rules, whether or not such a sale should be set aside by reason of accident, mistake, or any other circumstance which reasonably tended to cause the property to be sold for an inadequate price is a question to be determined by the court. In the trial of such a case before a jury, it is the province of the jury to determine whether or not the circumstances relied upon by the plaintiffs to show that the sale should be set aside really occurred; and, if such allegations are sustained by the jury, then it is the exclusive province of the court to determine whether or not by reason thereof the sale should be set aside. Kauffman & Runge v. Morriss, 60 Tex. 119; 2 Black on Rescission and Cancellation, § 675, p. 1531.

But no objection was made to special issue No. 3 on those grounds; and we shall discuss the objection made thereto without reference to whether or not the submission of that issue showed an error apparent of record, and therefore fundamental.

We quote the following from the opinion of the Commission of Appeals in the case of Robertson & Mueller v. Holden, 1 S.W.(2d) 570, which was expressly approved by the Supreme Court:

"Article 2189 of Vernon's Annotated Texas Statutes, providing for the submission of cases upon special issues, declares:

"'In submitting special issues, the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues.'

"In the nature of things, the statute has not attempted to declare what 'legal terms' shall be explained or defined further than 'shall be necessary to enable the jury to properly pass upon and render a verdict on such issues.' Reasonable necessity, considering the term or terms used, then, should be the test. Ordinary words of simple meaning, of course, need not be defined. But those terms which in law have a distinct fixed meaning which an ordinary person would not readily understand should, upon proper request, be defined. This is recognized in the universal practice in negligence cases of the giving of a definition of such terms as 'ordinary care,' 'neg-

ligence,' 'proximate cause,' 'unavoidable accident,' and the like."

And in Washington Fidelity Nat'l Ins. Co. v. Williams, 49 S.W.(2d) 1093, in an opinion by the Commission of Appeals, which was likewise expressly approved by the Supreme Court, it was held that in the trial of a case on special issues it was reversible error for the trial court to refuse to define the terms "personal bodily injuries," "external, violent and accidental means," and "directly and independently of all other causes" which were embodied in an insurance policy on which the suit was based. See, also, G., C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183.

Hirshfield v. Davis, 43 Tex. 155, involved the public sale of land belonging to an estate by an administrator. The probate statute under which the sale was made provided that, when there has been a public sale by the administrator, if the sale appears "to have been fairly made and in conformity to law, the court shall make the order confirming it." And in the opinion which sustained the action of the trial court in refusing to confirm the sale made in that case, the Supreme Court had this to say: "The sale has not been fairly made if it appears that the land has been sold for an unfair or inadequate price. The word 'fair,' as defined by Webster, is synonymous with honest, equitable, impartial, reasonable. If, therefore, it appears that the price at which the land was sold was inequitable or unreasonable, the sale, within the meaning of the law, has not been fairly made and should not be confirmed."

To the same effect was the decision of the Court of Civil Appeals in the case of James v. Nease (Tex. Civ. App.) 69 S. W. 110. In 25 Corpus Juris, pp. 431, 432, many definitions are given of the adjective "fair" as meaning "impartial," "free from suspicion of bias," etc., and of the adverb "fairly" as meaning "equitably," "honestly," "impartially," etc.

■■ The defendants in the former judgment of foreclosure whose property was sold by the sheriff were primarily and most vitally interested in having it sold for an adequate price, and it was important that their interest should be duly considered by the sheriff in making the sale, to the end that the property should sell for its reasonable market value, and proper instructions should have been given by the court which would bring to the minds of the jury that point. Especially is it true in this case, since, as shown by the testimony of Baughman, he attended the sale as a representative of the plaintiffs in the judgment and not as a representative of defendants. And his testimony further shows that, before the property was offered for sale by the sheriff, he, in the names and for the benefit of his clients, made a tentative contract of sale of the property for the full amount of the judgment under which the sale was made; the property to be so conveyed by his clients after he had bid it in at the sheriff's sale; and the proof further showed that, after Mr. Melton had made two bids for the property and his second bid was for some $1,500, Baughman requested him to refrain from further bidding since he (Baughman) wished to bid it in for his clients on as low a bid as might be necessary to purchase the property for his clients. In compliance with that effort to stifle bidding, Melton then ceased to bid, and thereafter Dr. Beavers began bidding in competition with Baughman, and finally bid $2,200. The course so pursued by Baughman was clearly adverse to the best interests of defendants in the judgment and solely for the benefit of plaintiffs therein. One of the maxims of equity is that "he who comes into equity must come with clean hands." 21 C. J. 180; 10 R. C. L. 389; 2 Black on Rescission and Cancellation, § 448. But, even though it should be said that the plaintiffs in the foreclosure judgment did not come into the present suit with clean hands by reason of Baughman's attempt, and with success, to stifle competition in the bidding for the property at the sheriff's sale and thereby buy it in for his clients for less than its market value, to the detriment of the interests of defendants in that judgment, yet that action on the part of Baughman could not in any manner prejudice the rights of the defendants in that judgment who were interveners in this suit.

With respect to the failure of the court to submit several issues requested by appellants, we believe it sufficient to say that upon another trial it will be proper to submit special issues embodying any fact or facts alleged in appellants' pleadings which the evidence tended to show that, without negligence on his part, Baughman, as representative of his clients, was not given a reasonable opportunity to raise Dr. Beavers' bid of $2,200 for the property, and that, had the sheriff accorded him that opportunity, he would have offered such a bid.

■ And it will be incumbent upon interveners to allege and prove that the sale of the property to Dr. Beavers for an inadequate consideration was unmixed with any act or negligence on their part which was reasonably calculated to proximately contribute to that result. Kauffman & Runge v. Morriss, 60 Tex. 119; Johnson v. Crawl, 55 Tex. 571; Gillis v. Rosenheimer, 64 Tex. 243, 246; 10 R. C. L. 388; 2 Pomeroy, Equitable Remedies, § 684.

For the reasons noted, the judgment of the trial court is reversed, and the cause is remanded without the necessity of a determination of other assignments presented in appellants' brief.