[Opinion delivered June 29, 1883.]

―――――――

60   119
87   454

KAUFFMAN & RUNGE v. T. W. MORRISS ET AL.

(Case No. 1483-4883.)

1. FRAUD — INADEQUATE CONSIDERATION.— While mere inadequacy of price will not of itself warrant the setting aside of a sheriff's sale, yet if, in addition thereto, there be the appearance of unfairness, or any circumstance, accident or occurrence in relation to the sale of a character tending to cause such inadequate price, the sale will be set aside; and when the disproportion between the price and the real value of the property is enormous, but slight circumstances will justify the inference that the sale was fraudulent.

2. SAME.— If, in such a case, there were circumstances connected with the sale which may have operated to prevent the property from bringing a higher price, even though such circumstances were unknown to the purchaser, the sale will be deemed fraudulent in law.

3. SAME.— The greater the inadequacy of price, the slighter need be the circumstances of fraud, accident or mistake that will disturb the sale.

4. FACT CASE.— See statement of case and opinion for facts under which the supreme court affirmed a judgment setting aside for fraud a sheriff's sale of a tract of land which was worth twelve times the amount bid.

APPEAL from Burleson. Tried below before the Hon. I. B. McFarland.

Suit brought by the appellee Morriss, joined by the other appellee, Mrs. Connor, against Thos. F. Hudson and others, to set aside a sheriff's sale of land, made under a *venditioni exponas* based on a judgment owned by the appellees.

The ground on which the appellees sought to set aside the sale was that, without any fault on their part, and owing to circumstances beyond their control, the land was sold for a grossly inadequate price.

The appellants Kauffman & Runge, who had bought out Hudson's interest pending the suit, intervened as defendants.

The case was tried by the court without the intervention of a jury, and judgment was rendered for the plaintiffs. Kauffman & Runge alone appealed.

About the 20th of March, 1867, the district court of Burleson county rendered its judgment in favor of W. S. Holmes against B. Boulds Baker for $7,389.86, with a foreclosure of the vendor's lien on a tract of land described in the judgment. The judgment bore interest from its date at ten per cent. per annum.

During the pendency of that suit a three-fourths interest in the notes sued on was transferred to the plaintiff Morriss, and one-fourth to the intervenor, Mrs. Connor. The suit was, however, prosecuted to judgment in the name of the original plaintiff, Holmes.

At the rendition of the judgment, Boulds Baker was insolvent and afterwards went into bankruptcy.

On the 15th of April, 1867, an execution against Baker for costs was issued to Galveston county, which was returned *nulla bona*. On the 30th of March, 1868, another execution for costs was issued to Burleson county in favor of the officers of court, which was returned satisfied.

On the 3d of April, 1868, the writ was issued under which the sale was made.

The execution and order of sale were not returnable until the second Monday after the first Monday in September, 1868. The sale was made under the *venditioni exponas* on the first Tuesday in May, 1868, the earliest day at which it could have been made, and

two thousand three hundred and fifty-six acres of land, worth from $2.75 to $5 per acre, were sold to Hudson for account of himself and Holmes for twenty-one cents per acre, aggregating $494.76.

The owners of the judgment knew nothing of the issuance of the order of sale until after it was made.

The court found as conclusions:

1. That Morriss and Mrs. Connor were the owners of the judgment against Baker under which the order of sale was issued and the sale made.

2. That Mrs. Connor, who was a daughter of Holmes, was, at the date of the sale, a minor, and that neither Morriss nor Baker was present at the sale. That Morriss had no notice of the issuance of the order of sale, or of the advertisement of sale, until after the sale had been made, and that had he been informed of it, he would have attended and made the land bring the amount of the judgment.

3. That under the circumstances attending the issuance of the order of sale and the advertisement and sale of the land, Morriss was not chargeable with negligence in failing to attend the sale.

4. That Hudson was induced to bid for the land by the representations of Holmes that the land would sell very low, as Morriss was not present. That Hudson's purchase, though made in his own name, was made with a private understanding between him and Holmes that it should be for their joint benefit and to be afterwards divided between them.

5. That the land sold for a greatly inadequate price.

6. That the inadequacy was caused by the manner of issuing the execution and making the sale.

7. That the sale was unfair and inequitable, and was a legal fraud on the plaintiff and intervenor; and that they were legally and equitably entitled to have it set aside and annulled.

The foregoing, in connection with the facts stated in the opinion, will be sufficient for a proper understanding of the case.

*Robert G. Street*, for appellants, cited:   Taul *v.* Wright, 45 Tex., 395; Hancock *v.* Metz, 15 Tex., 210; Sydnor *v.* Roberts, 13 Tex., 598; Howard *v.* North, 5 Tex., 290; 13 Johns., 97; 1 Snow (Tenn.), 10; Wharton *v.* Sexton, 10 Wheat.

*Sayles & Bassett* and *A. W. McIver*, for appellee.

WILLIE, CHIEF JUSTICE.— Mere inadequacy of price is not in itself sufficient to warrant the interference of equity for the pur-

pose of setting aside a sheriff's sale of property made to a *bona fide* purchaser.   1 Story's Eq., § 245; Rorer on Jud. Sales, § 854.

" But if in addition to such inadequacy there be any appearance of unfairness or any circumstance, accident or occurrence in relation to the sale of a character tending to cause such inadequacy, then the sale will be set aside."   Rorer on Jud. Sales, § 398.

When the disproportion between the value of the property and the price for which it sold is enormous, but slight additional circumstances will justify the inference that the sale is fraudulent.   Allen *v.* Stephanes, 18 Tex., 658.

And in such cases, if " there are circumstances attending the sale which may have operated to prevent the property from bringing a higher price, although at the time they may have been unknown to the purchaser, the sale will be regarded by the court as, in its legal sense, fraudulent."   Chamblee *v.* Tarbox, 27 Tex., 146.

These are some of the general principles by which the courts of the country, including those of our own state, are governed in setting aside judicial sales when the property has sold for less than its value.

Inadequacy of price is the inducement to the action of the court in disturbing the sale, after the establishment of a cause sufficient to authorize it to interpose.   Cohen *v.* Wagner, 6 Gill, 236.

What causes are sufficient for this purpose cannot well be reduced to any general rule, but they must be such as were calculated to prevent the property from bringing its value, or something reasonably near what it should bring at public sale, and which on the particular occasion have actually produced that effect.

In the case of Hoppock *v.* Conklin, 4 Sandf. Ch., 582, the court set aside a sale where the property brought one-third of its value, and the defendant was prevented from attending the sale by accidental causes, and had written to an agent to represent him, and had reason to believe that the plaintiff in execution and his solicitor would not let the premises be sold for less than the debt and costs.

In May *v.* May, 11 Paige, 201, a sale was set aside where the property brought about one-ninth of its value, because the auctioneer was guilty of some irregularities in crying the wrong bid, and suspending the sale temporarily, the judgment creditor being ignorant that the sale was to take place.

In Seaman *v.* Riggins, 1 Green Ch., 214, the property sold for more than half its value, and yet the court set aside the sale at the instance of the defendant in execution, because the solicitor for one of the complainants had made a mistake in naming the place of sale, and because an accident had happened to an agent of one of the

complainants who wished to bid so as to make the property bring enough to satisfy the demands of all the plaintiffs, the party he repsented holding a second mortgage upon it.

In Gould v. Gager, 18 How. Pr., 32, where the property sold for more than a third of its value, the sale was set aside because the defendant in execution had in good faith intended to appeal from the judgment under which the execution issued, but was prevented from obtaining a *supersedeas* by a mistake in the justification of his sureties, of which defect the other party failed to give him notice, disregarded the sale and bid in the property.

In Roberts v. Roberts, 13 Gratt., 639, a sale of a tract of land by a chancery court on a day so inclement that persons intending to be present and to bid for a part of the land were deterred from attending, and when there was but one bidder present, who lived at the place, the sale was set aside without weighing the evidence as to the sufficiency of the price at which it was sold.

And so in our own state, in Allen v. Stephanes, 18 Tex., 671–2, where the property sold brought one-twentieth of its value, the court seemed disposed to set the sale aside merely for the enormous disproportion between the price and the value of the property. To avoid the sale it seized upon the single fact that the jury might have inferred fraud from the postponement of the sale made by the sheriff, and that thereby a person who had attended the sale intending to bid the value of the lot was induced to believe the sale would not take place and was prevented from bidding.

In Taul v. Wright, 45 Tex., 395, the court set aside a sale where the property was worth at the time one hundred times more than the price for which it was sold, the only additional circumstance being the absence on business of the defendant in execution at the date of the sale.

And in Johnson v. Crawl, 55 Tex., 571, a sale was set aside where the property brought $1,000 and was worth between $1,300 and $2,000, because the judgment creditor was prevented from being present at the sale by reason of inclemency of the weather, and because he expected that it would occur, as usual, between one and two o'clock, whereas it took place at twelve o'clock.

These cases are cited, and many others might be added, as illustrating the views of different courts, including our own, as to what constitutes inadequacy of price in its various degrees; and what additional circumstances are sufficient to avoid judicial sales where such inadequacy is established.

The inference from these cases is that, as the inadequacy of price

becomes greater, the slighter need be the circumstances of fraud, accident or mistake to disturb the sale.

We find in the present case that the land brought less than one-twelfth of its value at the date of the sale. This was certainly an enormous disproportion between the price obtained and the actual worth of the property. It is unnecessary to detail all the circumstances which brought about this sacrifice of the property. Certain facts, however, are prominently developed by the evidence; one of these is that Morriss, the owner of three-fourths of the judgment, whose interest it was to make the property bring a good price, was absent from the sale by no fault of his own, but by the act of the clerk in issuing an execution without Morriss' order or knowledge, for the purpose of securing the costs of his predecessor, when Morriss, who as attorney and owner of a large interest in the judgment, was entitled to control the issuance of that writ.

The facts further show that there was great and unusual haste in making the sale, for it occurred at the earliest possible time allowed by law after the execution was issued. It further appears that it would not have occurred at that time but for the fact that the sheriff erroneously supposed that he could not postpone the sale. Hill, too, as agent, would have bid in the property for Morriss, had he not been informed that Morriss had notice of the sale, and concluded, therefore, that he would be present.

From these facts it is apparent that several circumstances of accident and mistake combined to prevent the land from bringing its reasonable value. They prevented the real plaintiff in execution from bidding at the sale; and the absence of this party on such occasions, when he would otherwise have been present but for occurrences which he could not foresee, is always a potent reason for setting aside such sales, more especially when, as in the present case, he would, if present, have bid the full value of the property.

But in addition to all this, we find that on the day of sale Holmes, the nominal plaintiff, is present, and after first ascertaining that Morriss is absent, and consequently there will be no one to run up the land, makes an arrangement with Hudson to purchase it on shares, Hudson to furnish the money needed in cash, and Holmes to pay his half in the future, and they two to divide the land between them. Holmes, on account of the relationship he bore to the suit and the parties, was under at least a moral obligation to protect their interests instead of injuring them. He should have endeavored to make the land bring its full value for the benefit of the party who had paid a full price for his interest in the judgment, and for

the intervenor, who was his daughter and a minor. Instead of doing this, he combines with Hudson to profit by inflicting a loss upon them. Hudson was no innocent participant in this fraud, for Holmes seems to have disclosed to him the whole plan by which they were to succeed, and the reasons why he thought it would be a success, and Hudson entered into the arrangement and carried it out according to the plan. If he had been innocent of the fraud it would not have validated the sale, but he seems to have participated with full knowledge of the whole matter.

Holmes did not disclose to any one except Hill and Hudson that he had no interest in the judgment, and therefore no interest in making the land bring a good price. No one else seemed to be informed of this fact. The natural result was that the other parties present at the sale supposed that Holmes would make the property bring its value, whilst Hudson and Hill knew that he would not. There are many other facts in the case strongly tending to show fraud on the part of the persons who purchased the land at the sale, but it is unnecessary to detail them. Enough has been cited from the evidence to show that the grossly inadequate price for which the land sold was caused not only by the mistakes and accidents which kept Morris from the place when it was sold, but by the fraud of Holmes and Hudson in combining to become the owners of it under circumstances of great unfairness and injustice, and this is a much stronger case than any to be found in the authorities.

The fourth error assigned is immaterial in the view we have taken of the case, as the judgment was based upon inadequacy of price and attendant circumstances vitiating the sale.

There is no error in the judgment, and it is affirmed.

AFFIRMED.

[Opinion delivered June 29, 1883.]