### NANCE et al. v. CURREY.
#### No. 14627.

Court of Civil Appeals of Texas. Dallas.

April 24, 1953.

·James H. Martin and Wm. R. Herring, both of Dallas, for appellants.

John A. Erhard, Dick P. Wood and Phil Wilson, all of Dallas, for appellees.

DIXON, Chief Justice.

This is a suit to set aside a sheriff's sale. Approximately 360 acres of land known as "Flowerdale Farm" belonging to J. C. Currey, appellee, was sold on September 4, 1951 by the Sheriff of Dallas County to satisfy a judgment of $4,480 in favor of appellant George M. Nance. Appellee brought this suit to set aside the sale and the deed of the sheriff to Nance, and also to set aside the deed of appellant George M. Nance to appellant James H. Martin, his attorney, of an undivided one-half interest in the land. The case was tried before the court without a jury and resulted in judgment for appellee Currey, setting aside the sale and deeds. Nance and Martin have appealed.

The trial court found upon sufficient evidence that the property was worth $175,000 at the time of the sale. Against it there was an unpaid balance of $32,483.95 on a mortgage note originally in the sum of $75,000. At the sheriff's sale appellant Nance bought the property for $2,500, which amount he credited on the judgment he held against appellee Currey. He thus acquired the land subject to the unpaid balance of $32,483.95 on the mortgage.

In his original petition appellee plead a tender to appellants of sufficient moneys to pay the judgment of appellant Nance including principal, interest, and court costs. On July 1, 1952 appellee Currey, acting by and through his attorneys, paid into the registry of the District Clerk of Dallas County, Texas, cash in the sum of $4,890.18 in fulfillment of his tender and in compliance with the court's requirement. On July 3, 1952 the court entered judgment setting aside the sheriff's sale and the two deeds, and decreeing recovery by appellee of title and possession of the real property in question.

The trial court filed lengthy findings and conclusions which we here summarize: (1) The price of $2,500 bid and credited on the judgment by appellant Nance was so grossly inadequate as to shock the conscience of the court; (2) the appellee Currey was physically and mentally ill at and for some time prior to the sale Sept. 4, 1951; (3) appellee did not waive and was not estopped to plead various irregularities in connection with the sale; (4) there were irregularities including the following: (a) sale of the land in bulk instead of in separate tracts, (b) failure in the notice of sale to describe the land by its know name "Flowerdale Farm", (c) failure of the notice to give the correct locality in the county and the number of acres of the property, and (d) failure of the notice to state correctly the amount of the indebtedness against the property.

Appellants say, first, that appellee waived and is estopped to rely on the various irregularities found by the trial court in connection with the sale. The record shows that appellee was informed that his land was about to be levied on all in one body, not in separate tracts; that he attended the sale in person accompanied by three attorneys (not his present counsel); that he consulted during the sale with his attorneys

in regard to a proposed settlement of the controversy; and that he bid $2,010 on the property before allowing appellant Nance to bid it in at $2,500.

However, there is this significant finding by the trial court:

"I find as a fact that on September 4, 1951, J. C. Currey was physically and mentally ill and unable to transact business as an ordinary person. That he did not understand the nature of the proceedings and the consequences of his own actions in relation thereto * * *."

The above finding is well supported by evidence. A witness who had been a servant in the Currey home testified that Currey became ill in 1950, became worse in the summer and fall of 1951; could not remember his house number; would repeat the same questions frequently; could not call the names of people around him; his sight became impaired; he could not control his bodily functions in the summer and fall of 1951; and spent most of September 1951 in bed. Appellee's wife corroborated this testimony. She further testified that in June 1951 when their son came home from college, appellee could not think of his name; that he would start crying in frustration at his inability to write; and that his speech was impaired. A physician testified that appellee had an organic disease which caused a degenerative process of the brain; there was evidence of hemorrhages at the back part of his eyes; and appellee, in the doctor's opinion, was not of sound mind.

In his findings and conclusions the trial court did not mention waiver. We must therefore presume that the court found adversely to appellants on the issue. Rule 299, T.R.C.P.; Wisdom v. Smith, 146 Tex. 420, 209 S.W.2d 164. Certainly under the court's findings appellee did not voluntarily relinquish a known right. 43 Tex.Jur. 895.

The court expressly concluded that appellee was not estopped to bring this suit. There is testimony to support a finding that appellant Nance did not rely on or in any way change his position because of anything that appellee said or did in connection with the sale. Reliance and change of position are essential elements of estoppel. Nelson v. Wilson, Tex.Civ.App., 97 S.W.2d 287; 17 Tex.Jur. 145. Appellant Nance testified that he was willing to spend $2,500; that he understood it was part of the judgment and that, anyway, he understood that he wouldn't have to pay the $2,500 if the land wasn't worth it.

Further, the court found as a fact that appellee, due to physical and mental illness, did not understand the nature of the proceedings and the consequences of his own actions. It follows that he cannot be held to have had that knowledge of the circumstances attending the sale, or of his own rights in connection therewith, which is a necessary element of estoppel. Moore v. Carey Bros. Oil Co., Tex.Com.App., 272 S.W. 440, 39 A.L.R. 1247; 17 Tex.Jur. pp. 138, 139.

We overrule appellants' first, third, fifth, sixth, eighth, ninth, tenth, eleventh, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth and eighteenth points on appeal.

The trial court concluded that the price of $2,500 bid and credited on the judgment by appellant Nance was so grossly inadequate as to shock the conscience of the court. The court's finding that the property was worth $175,000 was conservative. There was testimony of real estate men that 200 acres of the 360-acre farm was industrial property worth $1,000 per acre. Aside from appellant Martin's testimony, the lowest estimate was approximately the value found by the court. Appellant Nance did not assume or agree to become personally liable for the $32,483.95 balance on the mortgage to which the property was subject. For a $2,500 credit on the judgment, he took over legal title to mortgaged land in which there was an equity of redemption of the value of $143,516.05. We believe that the trial court's conclusion has ample support in the evidence and furnishes a basis as a matter of law for setting aside the sheriff's sale. Cox v. Wheeler, Tex.Civ. App., 150 S.W.2d 159; Moore v. Miller,

Tex.Civ.App., 155 S.W. 573. This is especially true when the gross inadequacy of price is accompanied by irregularities in connection with the sale, though such irregularities be slight. Bean v. City of Brownwood, 91 Tex. 684, 45 S.W. 897; Selkirk v. Selkirk, Tex.Civ.App., 297 S.W. 578, 18 Tex.Jur. 703, 707. We overrule appellants' second, fourth and seventh points.

We think the court's findings of irregularities had ample support in the evidence. Under Rule 647, T.R.C.P., the notice of sale should have contained a statement giving the number of acres to be sold, the locality in the county, and the name by which the land is generally known. Under some circumstances these irregularities, standing alone, might not warrant setting aside an execution sale. But when coupled with a grossly inadequate price, as found by the court, we think the irregularities become material, as pointed out in the preceding paragraph.

Art. 3806 of our statutes provides that real property consisting of several lots, tracts, or parcels situated in a city shall be sold under execution separately as to said lots, tracts, or parcels. Part of the land involved here was in the City of Dallas. A tract consisting of 8.6 acres was located in City Block 6106 of the City of Dallas. A tract of 2.6 acres was located in City Block 5836. The remaining property was adjacent and contiguous to the city limits. In our opinion it was an irregularity to sell the whole 360 acres in bulk, instead of selling the above tracts separately. It is true that this statute has been held to be directory only, not mandatory. We believe, though, that it must be taken into consideration in this case because of the court's finding of gross inadequacy of price. Guy v. Edmundson, Tex.Civ.App., 135 S.W. 615 (writ denied).

Appellants attack the sufficiency of appellee's tender. Appellee plead a tender in his original petition, offered to do equity and to perform such decree as the court might enter. Appellants had indicated the tender would not be accepted. Under the circumstances the law does not require an actual cash tender. Kinzbach Tool Co. v. Corbett-Wallace Corp., 138 Tex. 565, 160 S.W.2d 509; 40 Tex.Jur. 851. Nevertheless at trial, appellee made two actual cash tenders: one of $2,625, the amount bid by appellant Nance at the sale, plus interest; and one of $4,480, the principal amount of the judgment held by appellant Nance. Both tenders were rejected by appellants. We think these tenders were more than sufficient in amount. The law is that where the holder of a judgment buys the land under execution, credits the amount of his bid on the judgment and pays the costs in cash, a tender by the judgment defendant of the amount of costs paid by the judgment plaintiff is sufficient, when there are adequate grounds for setting the sale aside. Guy v. Edmundson, Tex.Civ.App., 135 S.W. 615; 18 Tex.Jur. 693.

The record shows further that on June 27, 1952 the trial court made a docket memorandum stating that when "plaintiff has made a legal tender of the amount of the judgment * * * plus costs, * * *, plus accrued interest up to date, * * * the sheriff's deed and deed from George M. Nance to James H. Martin will be set aside * * *." In compliance with this memorandum, appellee on July 1, 1952 deposited with the District Clerk the sum of $4,890.-18, which is being held for the benefit of appellants. This money was paid by appellee through his attorneys, who themselves apparently lent appellee the money to enable him to make the tender.

We overrule appellants' twelfth point.

The judgment is affirmed.