Frank L. MABRY et ux., Appellants,

v.

Genevieve (Mrs. R. T.) ABBOTT, Appellee.

No. 5057.

Court of Civil Appeals of Texas, Waco.

Sept. 16, 1971.

Rehearing Denied Oct. 7, 1971.

---

Edwards, Faulkner & Giles, Waco, for appellants.

Sleeper, Boynton, Burleson, Williams & Johnston, Jerry L. Jamieson, Waco, for appellee.

## OPINION

HALL, Justice.

In June, 1960, the appellants, Mr. and Mrs. Mabry, purchased a house and lot located in Waco, Texas from the appellee, Mrs. Abbott. A part of the consideration was a promissory note in the principal sum of $8,846.52, secured by a deed of trust on the property, executed by the Mabrys in favor of Mrs. Abbott.

Mrs. Abbott brought this action seeking a deficiency judgment after a foreclosure and sale under the deed of trust. She pleaded for a recovery of $8,897.60 (alleging a principal balance due on the note of $6,983.08, with interest due thereon in the amount of $680.84, and delinquent taxes paid by her totaling $1,233.68), less $2,000 which was the amount paid by her for the property at the trustee's sale.

The Mabrys filed a cross-action in which they sought actual and exemplary damages, alleging that by proceeding with foreclosure, Mrs. Abbott "knowingly, wantonly and maliciously" violated a written agreement to allow them to pay only the interest on the note until the mortgaged land in question could be sold. Following the conclusion of the evidence the trial court withdrew the case from the jury. Judgment was rendered that Mrs. Abbott recover the sum of $6,897.60, and that the Mabrys recover nothing on their cross-action. We affirm.

In four points of error, Mr. and Mrs. Mabry contend that the trial court erred in failing to submit to the jury (1) "the question of whether the plaintiff could have mitigated her damages;" (2) "the matter of the contract made between the parties concerning the extension of time on the note;" (3) "whether or not plaintiffs actions were wrongful and malicious;" and (4) "the matter of exemplary damages for wrongful foreclosure."

There is no dispute in the controlling facts. The note was payable in installments due on or before the 15th day of each month. All payments due in 1960 were made; in 1961, eight payments were made; in 1962, ten were paid; in 1963, eleven; 1964, ten; 1965, eight; 1966, five; 1967, eight; and in 1968, no payments were made. During this time, the Mabrys were suffering financial hardship because of family illnesses and business losses. Mrs. Abbott knew of their financial problems and was understanding. In the early part of April, 1968, Mr. Mabry, who was in the real estate business, proposed by letter to Mrs. Abbott that he sell the house and pay only the interest due on the installments until the sale. Mrs. Abbott responded with the following letter:

"April 11th.

"Dear Mr. Mabry:

"Sorry to hear about your father. You have my deepest sympathy.

"Your suggestion of paying the interest on the note until you can sell seems to be the most logical thing to do. So sorry your plans and dreams about the house didn't work out. I am sure you will keep my and your interest in the house covered with fire insurance.

"Sincerely yours,

/s/ Mrs. R. T. Abbott
1531 Kings Hwy.
Dallas, Texas."

In the latter part of April or the early part of May, 1968, Mrs. Abbott came to Waco and learned that city and school district taxes had not been paid on the property since 1962, and that county and state taxes were also delinquent. At this point she enlisted the aid of her son-in-law. They went to see Mr. Mabry and requested that he pay the balance due on the note or face foreclosure. He could not pay. By letter dated May 15, 1968, Mrs. Abbott notified Mr. and Mrs. Mabry that she was initiating foreclosure proceedings; and that the trustee's sale would be held on July 2, 1968, unless the Mabrys paid the balance of the note, and accrued interest, and delinquent taxes, on or before July 1st. The trustee named in the deed of trust failed to act, and on May 16th Mrs. Abbott appointed her son-in-law substitute trustee. On May 16th, the substitute trustee issued notice of trustee's sale at public auction, setting the time of the sale to be "on Tuesday, the 2nd day of July, 1968, between ten o'clock A.M. and four o'clock P.M." The notices were duly posted. The Mabrys did not appear and bid at the sale. The only persons present were Mrs. Abbott and her son-in-law. Mrs. Abbott bid $2,000 for the property. The property was sold and conveyed to her by the substitute trustee. Four or five months later, Mrs. Abbott sold the property on the open market for $4,500. This lawsuit was filed in April, 1969.

There is testimony in the record that at the time of the foreclosure sale the property had a market value of $12,500.

The deed of trust provides for acceleration of the note, if the Mabrys failed to pay the taxes on the property when due, and that " * * * said taxes may be paid by the legal holder of the note, and sums so expended shall be a demand obligation and become part of the debt hereby secured * * *."

On the trial Mrs. Abbott introduced the note and deed of trust. She adduced evidence of the payments made on the note

by the Mabrys; of her demand; of the delinquent taxes paid by her; of the regularity of the foreclosure and sale; and of the fact that a credit of $2,000 was allowed the Mabrys as a result of the sale. This proof established Mrs. Abbott's cause of action; and the burden then shifted to the Mabrys to show some reason for denying recovery to her. Tarrant Savings Association v. Lucky Homes, Inc. (Tex.Sup., 1964) 390 S.W.2d 473.

Under their first point of error, the Mabrys argue that Mrs. Abbott made no effort to mitigate her damages; that the trustee's notice of sale failed to specify the exact hour of sale and that this failure "may have discouraged certain bidders;" and that "striking off the property for only $2,000 at the sale" is further evidence of want of mitigation.

■ Art. 3810, Vernon's Annotated Texas Statutes, requires that all sales of real estate made under powers conferred by any deed of trust "shall be made at public vendue between the hours of 10 o'clock A.M. and 4 o'clock P.M. of the first Tuesday in any month." The record in this case shows that the sale in question was advertised and held strictly within the time intended by the statute. It was not necessary that the trustee's notice of sale specify an exact hour when the sale would be held. See McFarlane v. Whitney, 134 Tex. 394, 134 S.W.2d 1047, 1052 (1940). Moreover, there is no evidence that the failure of the notice of sale to set forth an exact time during the day "discouraged" anyone from attending the sale.

■ A mortgagee with power to sell may purchase at his own sale made at public auction; and mere inadequacy of consideration does not render a foreclosure sale void if the sale was legally and fairly made. Tarrant Savings Association v. Lucky Homes, Inc., supra. For avoidance of a trustee's sale there must be evidence of irregularity that caused or contributed to cause a sale for a grossly inadequate price. Sparkman v. McWhirter, (Tex.Civ.App.,

1954, writ ref.) 263 S.W.2d 832, 837. Cf. 39 Tex.Jur.2d 215, Mortgages And Trust Deeds, Sec. 156.

If we assume that the record raises a fact question as to whether the consideration paid for the property by Mrs. Abbott at the trustee's sale was "grossly inadequate," nevertheless, there is no evidence or contention of the slightest irregularity in the holding of the sale.

Appellants' first point is overruled.

Under their second point of error, the Mabrys urge that Mrs. Abbott's letter, in response to Mr. Mabry's "proposal to pay the interest on the note until he could sell the piece of property" constituted an acceptance of his proposal and effectively extended the time of payment of the note.

The only portion of Mrs. Abbott's letter which has any bearing on the question is the sentence which reads, "Your suggestion of paying the interest on the note until you can sell seems to be the most logical thing to do." In response to the question, "Did you ever indicate to her how long you considered it would take to dispose of the piece of property?" Mr. Mabry answered, "All that was said was a reasonable time within three months."

■ To be enforceable, an agreement to extend the time for payment of a negotiable instrument must contain all of the essential elements of a contract. Additionally, the agreement for the extension must be for a definite time, and it must mutually bind the parties to forbear their rights—the payee his right to demand payment and sue therefor if necessary, and the payor his right to pay—during the time of extension. Tsesmelis v. Sinton State Bank, (Tex.Com. App., 1932) 53 S.W.2d 461, 462.

■ There is no evidence that Mrs. Abbott agreed to forbear suit on the delinquent note, or that the Mabrys agreed not to pay the note, for any definite period of time. At most, the correspondence between the parties shows a mere indulgence by

Mrs. Abbott for an indefinite term of not more than three months; and as a matter of law, no contract for extension of payment of the note resulted therefrom. Whalen v. Etheridge, (Tex.Civ.App., 1968, writ ref., n. r. e.) 428 S.W.2d 824, 829.

Appellants' second point is overruled.

A prerequisite to the recovery of exemplary damages by a party is a showing that he has sustained actual loss or injury. 17 Tex.Jur.2d 243, Damages, Sec. 177. Because the Mabrys failed to carry their burden of showing actual damages, they were not entitled to have questions of exemplary damages submitted to the jury.

Appellants' third and four points are overruled.

The judgment is affirmed.