**PRUDENTIAL CORPORATION et al.,**
**Appellants,**

v.

**Abe BAZAMAN et al., Appellees.**

**No. 841.**

Court of Civil Appeals of Texas,
Corpus Christi.

June 20, 1974.

Opinion on Filing of Remittitur
July 11, 1974.

1.  All references are to the Texas Rules of Civil Procedure.

Henry Nuss, Kleberg, Mobley, Lockett & Weil, Corpus Christi, for appellants.

John Barrow, Nicolas & Morris, Corpus Christi, for appellees.

OPINION

NYE, Chief Justice.

This is a suit to set aside an execution sale. The appeal arises from a consolidation of two (2) separate lawsuits which attempted to try title to a piece of real property. The action, after consolidation and an amendment, is actually one brought by the appellees Bazaman and Woods to set aside the execution sale of a lot with improvements thereon belonging to Woods located in the City of Corpus Christi. Additionally, the appellees sought damages for certain items which were repossessed which they claimed should have been applied to reduce the amount of a prior money judgment against Woods and for exemplary damages. Trial was had before a jury. Based upon the jury's answers to Special Issues, judgment was rendered for the appellees.

At some time prior to 1970, Billy Joe Woods executed two (2) notes, one for $2,235.60 and the other for $402.00. The larger note was secured by a Buick automobile and the smaller note by color television set and four Cadillac aluminum "Mag" wheels. The notes came into the possession of General Finance Company, one of the appellants. Woods defaulted in his payments and General Finance seized the automobile and the mag wheels and then brought suit on the notes. Judgment was entered for the Finance Company in July of 1970 for the amount of the unpaid balance of the notes, $2,282.13, and costs. This judgment was duly abstracted in September of 1970 and several executions were attempted thereon without success. In the meantime, General Finance sold the repossessed automobile of Woods and its manager, Jack Painter, gave away the mag wheels. Despite this action, no credit was given to Woods on his debt.

In June of 1971, after the judgment against Woods had been entered and abstracted, Woods sold a piece of property on Cole Street to Abe Bazaman, one of the appellees. In October of 1971, General Fi-

nance ordered another execution on its judgment against Woods. On November 23, 1971, Bazaman recorded his deed to the Cole Street property, sold to him by Woods. On December 7, 1971, as a result of the execution, the Constable sold the Cole Street property. The only bidder at this sale was Jack Painter, who bid $1,000.00 and allegedly credited the amount of the bid to the judgment. Painter was the manager of General Finance Company and a Vice President and stockholder in the Prudential Corporation, the other appellant herein. It was Prudential who allegedly purchased the Cole Street property at the sheriff's sale and, therefore, claims under the constable's deed.

Sometime after the execution sale, Painter went on the Cole Street property and changed the locks on the residence located there. This precipitated two (2) lawsuits in trespass to try title: one in which Bazaman sued Painter, d/b/a Prudential Corporation and Painter d/b/a General Finance Company; and another suit involving the same property in which the Prudential Corporation sued Bazaman. These cases were consolidated in the 117th District Court of Nueces County. Woods then intervened on the side of Bazaman and they jointly filed an amended petition, subject to their other title claims, to set aside the constable's sale because of irregularities. Since an attack was made on the sale under the execution issued pursuant to a judgment of the 105th District Court, the entire case was transferred back into the 105th for trial.

After the evidence was presented the case was submitted to the jury on 45 special issues. The relevant jury findings can be summarized as follows: Bazaman and Woods did not conspire to delay or defraud existing creditors by Woods' conveyance of the Cole Street property to Bazaman in June, 1971; General Finance Company never gave Woods credit on its judgment for the property sold; and the $1,000.00 price bid at the constable's sale was grossly inadequate since the property had a fair market value of $12,000.00 on the date of the sale. The jury found that there were irregularities in the constable's sale in that: a) Woods was never given a chance to designate property he wished levied on; b) Woods was not given written notice of the sale; and c) the constable did not endorse a levy on the property. The jury found, however, that none of these above mentioned irregularities contributed to producing the grossly inadequate price; that General Finance failed to give a credit after judgment for the automobile or the mag wheels which it repossessed, the total fair market value of which was $950.00; Painter acted maliciously and with conscious disregard for the rights of Woods and Bazaman when he: (1) gave away the mag wheels; and (2) broke into the Cole Street property and changed the locks; as a result, the jury awarded exemplary damages in two issues: 1) in the amount of $4,529.93 in favor of Woods and 2) $1,500.00 in favor of Bazaman. Finally, the jury found that Woods had offered to pay Painter the full amount of the judgment in cash at some time prior to February 21, 1972.

Final judgment was entered in favor of Bazaman and Woods. The judgment recited: 1) that the constable's sale and deed of December 7, 1971, were set aside; 2) that Prudential take nothing in its title suit against Bazaman; 3) that the original judgment of General Finance Company against Woods was to be credited with $950.00 (the value of the automobile and mag wheels), leaving a balance of $1,373.33 plus 6% interest from July 30, 1970, until the date of this judgment (this equaled $219.73); 4) that Woods was entitled to $4,529.13 exemplary damages which gave him a net recovery against Jack Painter and General Finance of $2,936.87 plus interest; 5) that Bazaman was entitled to recover $1,500.00 exemplary damages against Painter and Prudential Corporation; 6) that Prudential Corporation, Jack Painter and General Finance were permanently enjoined from interfering with the

title or possession of Bazaman on the Cole Street property; and finally, 7) the costs were adjudicated against Painter, General Finance and Prudential.

The appellants advance 26 points of error which they divide into 3 main groups for the purposes of argument. The first group complains that the trial court erred in setting aside the constable's sale because it was not void and, therefore, could only be attacked directly. In addition, they contend that the jury found that the irregularities in the sale did not contribute to the grossly inadequate price thus giving them an absolute defense to the allegations that the sale was irregular and should be set aside.

The second group relates to error of the trial court in awarding punitive damages. It is not necessary for us to consider the third group because of the result we have reached hereinafter.

■ The appellants contend at the outset that appellees' suit is a collateral attack on the execution sale and the judgment should be set aside accordingly. To this contention, we disagree. It is true that from the time Bazaman filed his original suit until Woods intervened, his petition set forth causes of action in tort (trespass and conversion) and trespass to try title. The execution sale could not be overturned under these pleadings since they amounted to a collateral rather than a direct attack. See Moore v. Snowball, 98 Tex. 16, 81 S. W. 5 (1904); Cameron v. Saathaff, 363 S.W.2d 884 (Tex.Civ.App.—San Antonio 1962, writ ref'd n. r. e.). 24 Tex.Jur.2d Executions § 131. However, when Woods, the original judgment debtor, intervened and Woods and Bazaman filed their joint petition, the constable's sale came under direct attack. The amended petition states that:

"Plaintiffs would further show the Court that the Constable's Sale, held on or about December 7, 1971 was wholly inadequate, both in law and in equity, to pass

legal title to Defendant, Jack M. Painter, Jr., because of the following irregularities:

(enumeration of irregularities omitted)

WHEREFORE, premises considered, Plaintiffs pray . . . that on final hearing the Constable's Sale . . . be declared null and void and in all things be set aside; . . . "

The pleadings as a whole were clearly a direct attack on the constable's sale as well as a trespass to try title suit.

Our Rules of Civil Procedure give the procedures which must be followed in order to insure fairness in a sale under a writ of execution. Rules 621–656, Texas Rules of Civil Procedure. Any deviations from these rules are considered irregularities. The jury in this case found three irregularities based on ample evidence. First, they found that Woods was never given written notice of the sale; second, Woods was not given an opportunity to designate property to be sold in violation of Rule 647; and, third, the jury found that the constable did not endorse his levy of the property on the writ in violation of Rule 639. In addition to these irregularities, the jury found that the price for which the property was sold was grossly inadequate (the bid was $1,000.00 and the value of the property was $12,000.00).

There are two Supreme Court cases decided within a year of each other which are the beginning of the Texas Law in this area. The first is Kauffman & Runge v. Morriss, 60 Tex. 119 (1883) where the rule is stated as follows:

"Mere inadequacy of price is not in itself sufficient to warrant the interference of equity for the purpose of setting aside a sheriff's sale of property. . . . 'But if in addition to such inadequacy there be any appearance of unfairness or any circumstance, accident or occurrance in relation to the sale of a character tending to cause such inadequacy, then the sale will be set aside.'

(citation omitted) When the disproportion between the value of the property and the price for which its sold is enormous, but slight additional circumstances will justify the inference that the sale is fraudulent.

\*    \*    \*    \*    \*    \*

What causes are sufficient for this purpose cannot be reduced to any general rule, but *they must be such as were calculated to prevent the property from bringing its value, or something reasonably near what it should bring at public sale, and which on the particular occasion have actually produced that effect."* (emphasis added) Id. at 121.

This opinion does not pinpoint the type of irregularity which is necessary, but attempts to set up a sliding scale based on how inadequate the price is. The greater the inadequacy of price the slighter the type of irregularity which will overturn the sale. It is also interesting to note that the Supreme Court in this case held a price of less than 1/12th of the fair market value was an "enormous disproportion" and that the irregularity complained of was failure to give the debtor notice. These are almost the exact same facts as the case before us.

One year later in Allen v. Pierson, 60 Tex. 604 (1884), the Supreme Court covered much of the same ground. In *Allen,* the irregularities relied on were failure to give notice and failure to allow the debtor to designate property to be levied on. The jury had found an inadequate price but the defendant appealed claiming he was entitled to a charge inquiring whether the irregularities brought about the inadequacy. The Supreme Court agreed saying:

"In and by the charge the (trial) court assumed that the failure of the officer to demand a levy, etc., necessarily conduced to the inadequacy of consideration paid for the land. To that proposition we cannot yield assent. . . . *But under our system it is a question of fact to be determined from the evidence whether or not the irregularity had any influence upon the consideration for which the property sold. It is not a matter of law to be assumed by the court."* Id. at 607

Accord, McKennon v. McGown, 11 S.W. 532, 533 (Tex., 1889).

■  Despite the above quoted language from Allen v. Pierson the courts of this State have allowed a presumption or inference of fraudulent sale to arise in favor of a party who shows both an irregularity and gross inadequacy of price. State Mortgage Corp. v. Ludwig, 121 Tex. 268, 48 S.W.2d 950, 955 (1932). The presumption can also arise that the irregularity contributed to the inadequate price without affirmatively showing the connection. McLean v. Stith, 50 Tex.Civ.App. 323, 112 S.W. 355, 363 (1908, writ ref'd); Sias v. Berly, 245 S.W.2d 503, 513 (Tex.Civ.App. —Beaumont 1950, reversed on other grounds 152 Tex. 176, 255 S.W.2d 505). Stated another way, when gross inadequacy of price is shown coupled with irregularities in the sale, the irregularities become material. Nance v. Currey, 257 S. W.2d 847, 850 (Tex.Civ.App.—Dallas 1953, n. w. h.). In Rio Delta Land Co. v. Johnson, 475 S.W.2d 346, 348 (Tex.Civ.App.— Corpus Christi 1971, writ ref'd n. r. e.) we said:

"Generally, irregularities in a sheriff's sale standing alone might not warrant the setting aside of an execution sale. However, when such irregularity is coupled with a grossly inadequate purchase price, the irregularity becomes material, giving rise to a cause of action to set aside the sale. (citing authorities)

. . . Where a judgment creditor becomes the purchaser at an execution sale, he is deemed to have notice of all of the errors and irregularities that occurred in the proceedings or in the judgment itself. (citing authority) If the judgment creditor purchased the land at

an execution sale and pays the purchase price by crediting the judgment with the amount of his bid, he is not an innocent purchaser for value. (citing authorities).''

A reading of all of these cases leads us to the following conclusion. A plaintiff seeking to set aside an execution sale must show an irregularity calculated to effect the sale and an inadequate price. Rio Delta Land Co. v. Johnson, supra; Brimberry v. First State Bank of Avinger, 500 S.W.2d 675 (Tex.Civ.App.—Texarkana 1973, writ ref'd n. r. e.). This proof gives rise to an inference that the sale was fraudulent or that the irregularity contributed to the low price. The burden of going forward with the evidence then shifts to the defendant to show, if possible, that the irregularity complained of did not contribute to the inadequate price. It is important to note that the inference we refer to is rebuttable only if the defendant offers evidence that the irregularities did not contribute to the inadequate price. Allen v. Pierson, supra; Snouffer v. Heisig, 62 Tex.Civ.App. 81, 130 S.W. 912, 914 (1910, n. w. h.).

In the case at bar appellants received favorable jury answers which stated that none of the irregularities contributed to the grossly inadequate price. We have grave doubts that there was any evidence to support the jury's answers to these issues. However, appellees failed to have the trial court disregard the answer to these issues. Therefore, the issues and answers must stand. The trial court could not disregard these findings in the absence of a written motion. Rule 301, T.R.C.P.

This is not to say, however, that appellants have shown an absolute defense or that they are entitled to judgment as a matter of law. Without irregularities, inadequacy of price, standing alone, is not sufficient to set aside a sheriff's sale. But where there is inadequacy of price and a prompt offer to pay off the indebtedness, equity will step in and set aside the sale. In Moore v. Miller, 155 S.W. 573, 576 (Tex.Civ.App.—San Antonio 1913, writ ref'd) Judge Fly in a well considered opinion stated: "Appellees tendered into court a sufficient sum to pay off the judgment of the justice's court, interest, and costs; and it has been held that where inadequacy of price stands alone, and the defendant makes a prompt offer to pay off the indebtedness, equity will set aside the sale." Citing authorities. See also Saylors v. Wood, 120 S.W.2d 835, 839 (Tex.Civ.App. —El Paso 1939, aff'd 135 Tex. 267, 140 S. W.2d 164); Cox v. Wheeler, 150 S.W.2d 159, 161 (Tex.Civ.App.—Texarkana 1941, n. w. h.). One of the Special Issues inquired as to whether Woods offered to pay Jack Painter the amount of the judgment in cash prior to February 21, 1972. The jury found that he did. There was ample evidence to support this issue. We hold that the jury properly found that the price was inadequate; that an offer by Woods was made to Jack Painter to pay off the indebtedness; and that it was made in cash prior to February 21, 1972. We hold that this was a prompt offer at a time in close proximity to the sale. A tender made after the judgment sale is considered sufficient in law. See Moore v. Miller, supra. These answers of the jury were sufficient to uphold the judgment of the trial court setting aside the sale.

Next appellants complain that the jury's answer to special issue #19 is not supported by the evidence. Special Issue 19 inquires:

"Do you find from a preponderance of the evidence that General Finance gave credit of $1,000.00 on its judgment against Billy Joe Woods in payment for the property sold at execution sale?"

The jury answered: "We do not." There is ample evidence to support this answer.

Although the sheriff noted that the winning bid was $1,000.00, credited to judgment, Painter himself testified that the $1,000.00 was never credited to the account card which General Finance kept on Woods. This ledger card which was introduced into evidence, showed that General Finance's record of the Woods indebtedness was the same before the sale, after the sale, and up to the date of the trial.

■ This finding raises an additional ground to support the judgment of the trial court. The evidence is uncontradicted that the winning bid was the only bid on this property at the sale, that is, Painter's offer of $1,000.00 worth of credit on the judgment. As a general rule all judicial sales are for cash. There is, however, an exception to the general rule and that is where the judgment creditor becomes the purchaser at the sale. Under such circumstances, the judgment creditor may apply the amount of his bid as a credit on his judgment. Needham v. Cooney, 173 S.W. 979, 982 (Tex.Civ.App.—El Paso 1915, writ ref'd) and numerous cases cited therein. 24 Tex.Jur.2d Executions § 114. Here, it is uncontroverted that only the costs were paid in cash, the successful bid (of $1,000.-00) was supposedly a credit on the judgment. Yet, the record clearly shows that Prudential Corporation was the grantee recited in the deed, not the judgment creditor. Painter denies that he was the agent for Prudential. Prudential Corporation cannot avail itself of the exception to the rule requiring cash for the purchase since it was not the judgment creditor. Subsequently, Prudential attempted to remedy this defect by giving General Finance a check for $1,000.00 dated February 21, 1972. This was several months after the sale and after Bazaman had filed suit. The sum total of the above circumstances is that the purchase price was never really paid since: 1) the jury properly found that the debtor never received credit from General Finance and, 2) the sheriff never received cash or proper credit from the ac-

tual purchaser. A judicial sale is not complete until a proper bid is complied with. Texas Building & Mortgage Co. v. Morris, 123 S.W.2d 365 (Tex.Civ.App.—Beaumont 1938, writ dism'd).

There is still an additional ground which supports the trial court's judgment setting aside the execution sale. Bazaman and Woods, in their trial amendment, state that the sheriff's deed should be held to be void because the description in it (describing the Cole Street property) is a mistake. Appellees claim that it is undisputed that the Cole Street property was not the subject of the December 7, 1971, sale.

■ At one time prior to the execution in this suit, Woods owned another piece of property (which we call the Naples Street property). When the October execution was issued, it described a prior execution on Lot 11, Block 38, Del Mar Addition, which was the Naples Street property. The return on the execution describes the property levied on by the constable as "Lot 11, Block 38, Del Mar Addition (the Naples Street property) and "Lot 21, Block 24, Del Mar Addition" (a foreign piece of property which neither describes the Naples nor Cole Street property). It will be noted that neither of these descriptions fit the Cole Street property which appears later in the deed as Lot 1, Block 24, Del Mar Addition. The constable testified in his deposition that he sold Lot 11, Block 38, (the Naples Street property) at the December 7th sale. The constable erroneously calls it "Cole St." on one occasion. Jack Painter, the only bidder at the sale, testified repeatedly that he thought he was purchasing the Naples Street property. Under these circumstances the constable lacked the authority to sell the Cole Street property. The sale was therefore void. Our Supreme Court has stated:

"... (T)he sheriff could convey no other property except such as he had

sold at execution sale, and he could sell no other except such as *he had been ordered to sell*." (Emphasis added)

Pfeiffer & Co. v. Lindsay, 66 Tex. 123, 125, 1 S.W. 264 (1886). The conclusion is that if the sheriff's deed describes property other than that which was levied on or sold, the deed does not pass title. Straus v. Shamblin, 120 S.W.2d 598, 603 (Tex. Civ.App.—Amarillo 1938, writ dism'd) ; 24 Tex.Jur.2d Executions § 117. The appellants say there was obviously an intent by all of the parties to support the description in the constable's deed. We disagree, With all of the irregularities which accompanied this purported sale, there is no basis to support a presumption of intention of the parties to support the description in the constable's deed. The general reason has been stated as follows:

"When a sale is . . . voluntary . . . it will be presumed that something was intended to be conveyed, and every presumption will be indulged in aid thereof; but no presumption will be indulged in favor of an involuntary sale, as by a sheriff, of the debtor's property, because the debtor . . . does not intend a sale. So the property must be sufficiently described as to enable the bidders at such sale to know what is being sold; . . . For this reason the levy indorsed on the execution, and notice of sale thereunder must contain a sufficient description; and the description in the sheriff's deed cannot be looked to in aid of the levy, because it is written in after the sale, and bidders and persons attending the sale have not had the aid thereof in determining what is offered for sale."

Smith v. Crosby, 4 Tex.Civ.App. 251, 22 S.W. 1042, 1043 (1893, aff'd, 86 Tex. 15, 23 S.W. 10).

Although one of the posted notices is in evidence, there is no testimony as to what description was read aloud prior to the sale. With the record in such a state, it is apparent to us that the constable had no power to convey anything. This conclusion is supported by the fact that the only parties apparently present at the bidding and who testified (Painter and the constable) both swore that Naples Street or Lot 11, Block 38, Del Mar Addition, was the property sold. The property in controversy was the Cole Street property. The description of the Cole Street property appears once, in the notice exhibit and then subsequently surfaces in the constable's deed. To hold that the constable still had the power to sell a piece of property which is not described in the judgment, not described in the execution, levy or return and about which he testified that he sold a different piece of property, would be to emasculate the execution rules of our Rules of Civil Procedure. Rules 621–656, T.R.C.P.

An appellate court will sustain the judgment of a trial court if it is correct on any theory of law applicable to the case. Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73, 84 (1939). We hold the purported sale of the constable passed no interest and the sale was properly set aside by the trial court.

The second group of errors complained of by the appellants are all directed to the question of punitive damages which the jury found and the trial court awarded in its judgment. The jury found that Painter failed to give Woods credit on the judgment for the repossession and disposal of the Buick automobile and 4 Cadillac mag wheels. This credit, which arose prior to the judgment, was in the total amount of $950.00. The jury further found that Painter acted maliciously in his disposal of the mag wheels. The evidence of malice, taken as a whole, was sufficient to authorize a finding of exemplary damages in the amount of $4,529.93 for Painter's failure to give proper credit on the

judgment against Woods. Painter testified that he gave away the collateral (mag wheels) after repossession. He did not and would not identify the recipient. There was further testimony that these wheels had a salable value when they were given away and that a market for them could have been found. The jury after finding that Painter acted maliciously and with complete disregard of the rights of Woods in failing to allow credit on the judgment was instructed in determining the amount of damages that:

> "exemplary damages means an amount which you may in your discretion award as an example to others and as a penalty or by way of punishment in addition to any amount which may have been found by you as actual damages. You are further instructed that in awarding exemplary damages you may consider such elements as compensation for inconvenience, attorneys fees, expense of litigation and other expenses not recoverable as actual damages."

A mortgagee who repossesses collateral assumes a responsibility to care for the property and the debtor's interest prior to sale. This was not done. See Gathright v. Russell, 383 S.W.2d 441 (Tex.Civ.App.—Tyler 1964, writ dism'd); Motor Finance Co. v. Wolff, 387 S.W.2d 129 (Tex.Civ.App.—Houston 1965, n. w. h.). See also Kolbo v. Blair, 379 S.W.2d 125 (Tex.Civ.App.—Corpus Christi 1964, n. r. e.). We hold that the evidence supported the jury's findings and that the amount was not excessive nor unreasonably apportioned to the actual damages sustained. The award is not so large as to indicate passion, prejudice, corruption, or disregard of the evidence. Therefore, the jury verdict must stand. Tynberg v. Cohen, 76 Tex. 409, 13 S.W. 315 (1890); Skillern & Sons, Inc. v. Stewart, 379 S.W.2d 687, 692 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n. r. e.); First Security Bank & Trust Co. v. Roach, 493 S.W.2d 612, 619 (Tex.Civ.App.—Dallas

1973, writ ref'd n. r. e.). See Comment, 10 Hous.L.Rev. 131 (1972) for an excellent compilation of cases in this area.

The jury also found in answer to a special issue that Painter acted maliciously as to Abe Bazaman when he broke into the Cole Street property. The jury then awarded Bazaman $1,500.00 exemplary damages. These issues relate back to Bazaman's original suit which alleged that Painter was guilty of a tortious trespass when he broke into the Cole Street property and changed the locks. The jury made no findings of any actual injuries to Bazaman as a result of this trespass. Appellant contends that this award cannot stand in the absence of a finding of actual damages. We agree. Our Supreme Court in Fort Worth Elevators Co. v. Russell, 123 Tex. 128, 70 S.W.2d 397 (1934) stated the rule:

> "The rule in Texas is that exemplary damages cannot be recovered unless the plaintiff is shown to have sustained actual loss or injury. *There can be no recovery of exemplary damages in the absence of a recovery of actual damages.*" Id. at 409 (Emphasis added)

Accord, Hoffman v. French Ltd., 394 S.W.2d 259, 262 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.).

Despite the clarity of the above rule, some courts of this state have used only the first sentence of the quote to hold, in effect, that exemplary damages can be recovered if there is evidence that actual damages are recoverable but regardless of whether they are actually recovered. See Texas Electric Co. v. Linebery, 333 S.W.2d 596, 599 (Tex.Civ.App.—El Paso 1960, n. w. h.); Pan American Petroleum Corp. v. Mitchell, 338 S.W.2d 740, 742 (Tex.Civ.App.—El Paso 1960, n. w. h.); Mabry v. Abbott, 471 S.W.2d 442, 446 (Tex.Civ.App.—Waco 1971, writ ref'd n. r. e.). Ir-

respective of these cases, we believe the weight of authority compels us to follow the specific language of the Supreme Court literally, and hold that where, as in this case, there is an absence of a recovery of actual damages; there can be no recovery of exemplary damages. Fort Worth Elevators Co. v. Russell, supra; see 17 A. L.R.2d 527, §§ 4, 5 (1951) for other authorities. The $1,500.00 award to Bazaman must be reversed.

Since we have found that the judgment is excessive in the amount of $1,500.00, it is accordingly ordered that a remittitur of such amount be filed by Bazaman in this Court within 15 days following the announcement of the decision, whereupon this Court will reform the judgment of the trial court by the amount of such remittitur and affirm the judgment; otherwise, the judgment as to Bazaman will be reversed and remanded for a new trial and the judgment will then be affirmed as to Woods. Rule 440, T.R.C.P.; Southern Pacific Company v. Stanley, 473 S.W.2d 52 (Tex.Civ.App.—Corpus Christi 1971, n. r. e.); McDonald v. Webb 510 S.W.2d 670 (Tex.Civ.App.).

All points of error have been considered. The judgment of the trial court is affirmed on the condition of remittitur of the $1,500.00 exemplary damage award to Bazaman.

OPINION ON THE FILING OF RE-MITTITUR

This Court has suggested that appellee Abe Bazaman remit the amount of $1,500.-00 as set forth in the original opinion. The said appellee, through his attorneys, has filed a remittitur in the amount suggested and authorized in the opinion of this Court.

Therefore, in accordance with the opinion and judgment of this Court heretofore announced, the judgment of the trial court is here reformed to the extent of the amount remitted by appellee Bazaman.

The judgment as herein reformed is now affirmed.