**Bob G. WADE, Appellant,**

v.

**Carol Ann WADE, Appellee.**

**No. 13006.**

Court of Civil Appeals of Texas, Austin.

Jan. 2, 1980.

Rehearing Denied Jan. 23, 1980.

William T. Hall, Hall, Laden & Jacobs, Austin, for appellant.

R. Harry Akin, Pearce, Smith & Akin, Austin, for appellee.

SHANNON, Justice.

Appellee Carol Ann Wade filed suit in the district court of Travis County against her former husband, appellant Bob G. Wade. Appellee by her suit sought, primarily, sums allegedly due her by the terms of a property settlement agreement signed by the parties in 1973. After trial to the court, judgment was entered for appellee in the amount of $24,896.00.

The property settlement agreement provided, among other things, that appellant pay appellee $1,000.00 on October 5, 1973, and a like amount upon the fifth day of each month thereafter until the parties' youngest child entered college. The provisions of the property settlement agreement now in controversy are as follows:

"C. Anything herein to the contrary notwithstanding, if for any calendar year after 1973 first party's taxable income, as reflected by first party's federal income tax return for that year, and adjusted as provided for herein, is less than $36,-000.00, the foregoing monthly payments to second party during the next succeeding calendar year shall be reduced to one-third (⅓) of first party's taxable income, as adjusted, for the preceding calendar year divided by 12, but such monthly payments shall not, however, be reduced below $600.00 per month. If, however, for any calendar year after 1973, first party's taxable income, as adjusted as provided for herein, shall exceed $54,-000.00, the monthly payments to be made by first party to second party during the next succeeding calendar year shall be increased to one-third (⅓) of first party's taxable income, as adjusted for the preceeding [sic] calendar year, divided by 12, such increased monthly payments shall not, however, be increased above $1,500.00 per month. As used herein, the term 'taxable income' shall have the same meaning as that prescribed by the Internal Revenue Code of 1954, as now standing or hereafter amended, and all valid regulations now or hereafter promulgated thereunder, but *all* deductions for depletion, depreciation, interest, and alimony as called for under this contract, shall be added to 'taxable income.'" (Emphasis added)

Neither appellant nor appellee pleaded that the terms of the property settlement agreement were ambiguous. The rule in such instances is that the construction of the writing is a question of law for the court. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515 (Tex. 1968); *Myers v. Gulf Coast Minerals Management Corp.*, 361 S.W.2d 193 (Tex.1962). Generally, in the case of an unambiguous writing, the courts will give effect to the intention of the parties as expressed by or as is apparent from the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is the objective, not the subjective, intent which controls. *City of Pinehurst v. Spooner Addition Water Co., supra.*

After trial and upon request, the district court filed findings of fact and conclusions

of law. The court concluded in part as follows:

"1. References to 'first party's taxable income' (meaning Bob G. Wade's taxable income) in part VI, C of the Property Settlement Agreement between the parties should be construed to mean taxable income received by Bob G. Wade.

2. References to 'first party's taxable income' (meaning Bob G. Wade's taxable income) in part VI, C of the Property Settlement Agreement should be construed without regard to any subsequent remarriage by Bob G. Wade. That is, any income received by a subsequent wife of Bob G. Wade should not be taken into account. Nor should there be taken into account the allocation of ownership of income received by Bob G. Wade as between him and any subsequent spouse."

■ By 1975, appellant had remarried. For 1975 and 1976 appellant and his second wife filed joint income tax returns. Appellant argues that first party's taxable income for 1975 and 1976 under the property settlement agreement and applicable law is one-half of that shown on the income tax returns for those years.

A similar problem existed in *Rea v. Thomas*, Docket No. 12,317, Tex.Civ.App.—Austin, October 15, 1975 (unreported). The attorneys for the parties in the case at bar, and we believe the district court, were familiar with *Rea*. In *Rea* the property settlement agreement provided that the husband pay the wife a sum of money equal to thirty percent of his adjusted gross income for the preceding year as that term was defined in section 62 of the Internal Revenue Code and all valid regulations issued thereunder.

The husband in *Rea* remarried and he and his second wife filed a joint income tax return. The husband contended that his "adjusted gross income" for the preceding year was one-half of the community income for that year.

This Court in *Rea* accepted the husband's contention in reliance upon *Hopkins v. Bacon*, 282 U.S. 122, 51 S.Ct. 62, 75 L.Ed. 249 (1930). The Supreme Court of the United States in *Hopkins* held that under the Texas community property system the taxpayer's spouse is the owner of one-half of the community income and that the taxpayer is the owner of the other one-half. In *Rea* this Court concluded that the taxpayer's gross income for purposes of the property settlement agreement included only one-half of the community income. The Supreme Court of Texas refused the application for writ of error in *Rea* with the notation, "writ refused, no reversible error."

Section 63(b) of the 1954 Internal Revenue Code defines "taxable income" for individuals to mean adjusted gross income reduced by the sum of the excess itemized deductions, and the deductions for personal exemptions provided by section 151, and increased by the "unused zero bracket amount."

Appellee relies upon a statement from 26 CFR § 1.6013–4(b) (1979) that provides in part: "Although there are two taxpayers on a joint return, there is only one taxable income." This passage should be considered in the proper context.

The section from which this regulation is taken is entitled *"Computation of income, deductions, and tax."* The section is devoted entirely to a discussion of joint tax returns and how to properly compute the tax on a joint tax return. It speaks of deductions that are limited to a *"percentage"* of adjusted gross income, such as deductions to charitable organizations and limitations allowed on capital losses.

This regulation allows persons filing joint tax returns to aggregate their incomes in calculating the amount of deductions they might be permitted to take. In so aggregating the income, often a couple's gross income is higher, and likewise, the deductions allowed are higher. It is in this context that this regulation states that "[a]lthough there are two taxpayers on a joint return, there is only one taxable income."

This Court in the present appeal concludes, as it did in *Rea*, that appellant's "taxable income" for purposes of the property settlement agreement includes only one-half of the taxable income shown on the joint income tax returns.

■ In her suit, appellee also complained that appellant had failed to make timely payments upon a promissory note executed by the parties payable to Maurice Doke in the sum of $22,760.00. The note allegedly was secured by a second lien deed of trust against a residence located at 5930 Highland Hills Drive, Austin. The property settlement agreement had placed title to the residence in appellee and allegedly had obligated appellant to pay the promissory note. Appellee pleaded that in order to avoid foreclosure of the lien, she had paid the interest on the note in the sum of $2,276.00.

The property settlement agreement was executed on *October 11, 1973.* Paragraph IC provides as follows:

"C. The parties hereto formerly resided together at 5930 Highland Hills Drive, Austin, Texas, which they own as community property, subject to two (2) liens securing payment of a promissory note payable to the order of Mutual Savings Institution, of Austin, Texas, and to Maurice Doke, respectively, the aggregate unpaid principal balances of which were approximately $50,746.00 as of September 1, 1973. These premises are referred to hereinafter as 'the Highland Hills property.' "

The promissory note signed by the parties was dated October 1, 1975. The district court found as a fact in this connection that the promissory note of October 1, 1975, was a renewal and extension of the indebtedness referred to in paragraph IC of the property settlement agreement.

Point of error three is that there is no evidence to support the court's finding that the October 1, 1975, promissory note is a renewal and extension of the indebtedness referred to in the property settlement agreement.

"To support a contention that the payment of a negotiable instrument has been extended, there must exist all the elements essential to the execution of a contract . . . and the agreement for the extension must be for a definite time and mutually bind the parties, payor and payee, the one to forbear suit during the time of extension, and the other his right to pay the debt before the end of that time." *Tsesmelis v. Sinton State Bank*, 53 S.W.2d 461 (Tex.Com.App. 1932, jdgmt adopted); *Mabry v. Abbott*, 471 S.W.2d 442 (Tex.Civ.App.1971, writ ref'd n. r. e.).

The promissory note of October 1, 1975, does not provide that it was in renewal and extension of the indebtedness set out in the property settlement agreement of October 11, 1973, and there is no evidence to that effect. Point of error three is sustained.

Although appellant's obligation to appellee for 1974 under the property settlement agreement was $12,000.00, he paid appellee $11,200.00. Appellant's obligation to appellee for 1975, measured by his "taxable income" for 1974, was $12,000.00, and appellant paid $8,600.00.

The combined taxable income for appellant and his second wife for 1975 was $31,950.65 and for 1976 was $19,505.08. One-half of the taxable income for each year respectively is $15,995.32 and $9,752.54. Paragraph VI C of the property settlement agreement requires that "all deductions for depletion, depreciation, interest and alimony" be added to taxable income to obtain the sum for purposes of computation of appellant's obligation to appellee. Such deductions for 1975 were $25,972.74 which, when added to appellant's taxable income for 1975, total $41,968.06. The deductions for 1976 were $18,458.25 which, when added to appellant's taxable income for 1976, total $28,210.76.

Appellant was obligated to pay appellee $12,000.00 for 1976, based upon his taxable income for 1975, and $9,403.59 for 1977, based upon his taxable income for 1976. Appellant paid appellee $10,800.00 for 1976

and $4,800.00 for 1977. For these two years the deficiency totaled $5,803.59.

That part of the judgment awarding appellee attorney's fees is affirmed; that part of the judgment awarding appellee $2,276.00 representing appellee's payment on the note is reversed and judgment is rendered that appellee take nothing for such claim; and that part of the judgment awarding appellee $19,800.00 for arrearage in support is modified to award appellee $10,003.59 for such arrearage, and, as modified, that part of the judgment is affirmed.

Affirmed in Part, Reversed and Rendered in Part, Modified, and as Modified, Affirmed.