**In re DAVIS CHEVROLET, INC., Debtor.**

**DAVIS CHEVROLET, INC., Plaintiff,**

**v.**

**TEXOMA FINANCIAL CORPORATION, Defendant.**

Bankruptcy No. 591–50338–11.
Adv. No. 591–5036.

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Jan. 7, 1992.

Matthew Blair, Midland, Tex., for debtor.

Leon Mitchell, Gassaway, Gurley & Mitchell, Borger, Tex., for Texoma.

## MEMORANDUM OF OPINION ON VALIDITY OF A TRUSTEE'S SALE

JOHN C. AKARD, Bankruptcy Judge.

Davis Chevrolet, Inc. (Davis), a debtor-in-possession, claimed that the prepetition foreclosure sale conducted by Texoma Financial Corporation (Texoma) was void for the following reasons:

(1) Davis received no notice of the amount due to prevent foreclosure. The court finds that there is no law requiring Texoma to disclose such an amount to Davis and that Davis waived any right to

notice by signing the Loan Agreement, the Promissory Note, and the Deed of Trust.

(2) Notice of the Trustee's Sale was sent to Davis, filed and posted less than 21 days before the date of the foreclosure sale. The court finds that the statutory notice of the sale was sent to Davis, filed and posted 21 days before the sale took place.

(3) Notice of Trustee's Sale was improperly signed and executed by Substitute Trustees. The court concludes that the Substitute Trustees complied with the Deed of Trust provisions and that the foreclosure sale was valid.

(4) The statute of limitations was not tolled by the Memorandum of Agreement (Agreement) executed by the parties. The court finds that the Agreement had the effect of tolling the statute of limitations for 60 days during which time this Bankruptcy proceeding was filed.

Therefore, the Debtor's objections to the foreclosure of its real property are denied.

## BACKGROUND [1]

On May 15, 1986 Davis executed a Loan Agreement and Promissory Note with Panhandle Bank and Trust Company (Panhandle) for $1,104,941.33. As security for the loan, Davis pledged by Deed of Trust real estate in Borger, Hutchinson County, Texas. The Promissory Note was payable either on demand or in 11 monthly installments of $4,000 each with the balance due on May 16, 1987. Davis chose the latter option and defaulted on the last installment of the note and on the balance of principal and interest then due.

Panhandle was declared insolvent in December 1986 (before the note became overdue) and the Federal Deposit Insurance Corporation (FDIC) was appointed receiver. The FDIC assigned the note and liens to Texoma.

Almost four years after the note became due, on March 5, 1991, Texoma appointed Dwain Dickey Substitute Trustee. The appointment was acknowledged on March 11, 1991. On March 7, 1991 Mr. Dickey signed a Notice of Trustee's Sale. On March 11, 1991 Texoma appointed Terry Gassaway Substitute Trustee replacing Mr. Dickey; curiously, his appointment was acknowledged on March 5th. On March 12 Mr. Gassaway posted the March 7, 1991 Notice of Trustee's Sale signed by Mr. Dickey, filed a copy with the Hutchinson County Clerk, and mailed a copy to Davis by certified mail. On April 2 Mr. Gassaway conducted the Trustee's sale. The Trustee's deed was filed on April 9, 1991.

Davis and Texoma executed a Memorandum of Agreement on the date of sale, April 2, 1991. The Agreement granted Davis 60 days to raise $200,000 for which sum Texoma would release the property. If the $200,000 was not paid, the Agreement provided that Davis would pay Texoma for the interest incurred on the note for the 60-day forestalling period, additional taxes and penalties incurred by Texoma during the 60 days and the pro-rata cost of casualty insurance for the 60-day period. Texoma agreed to let Davis retain possession of the property for 60 days and not to sue Davis during that time period.

Davis filed a Chapter 11 proceeding on May 20, 1991, thereby invoking the jurisdiction of this court.[2] Davis then filed this adversary proceeding to determine the validity of a prepetition foreclosure sale conducted by Texoma.

### STATUTE

Nonjudicial foreclosures are governed by § 51.002 of the Texas Property Code which provides in pertinent part:

(b) Notice of the sale, which must include a statement of the earliest time at which the sale will occur, must be given

---

1. The court adopts the Stipulated Facts contained in the Pretrial Order, but will state only those facts and such additional facts as are necessary to this opinion.

2. This court has jurisdiction of this matter under 28 U.S.C. § 1334(b), (d), 28 U.S.C. § 157(a),

and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(A), (E), and (O).

at least 21 days before the date of the sale:

(1) by posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property will be sold;

(2) by filing in the office of the county clerk of each county in which the property is located a copy of the notice posted under Subdivision (1); and

(3) by the holder of the debt to which the power of sale is related serving written notice of the sale by certified mail on each debtor who, according to the records of the holder of the debt, is obligated to pay the debt.

. . . .

(e) Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address as shown by the records of the holder of the debt. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.

## DISCUSSION

### *Notice of Amount Due*

Davis asserted that the notice of foreclosure was deficient in that Davis did not receive notice of the exact amount due on the note prior to foreclosure sale.

■ A demand for payment, also known as presentment, is governed by the Texas version of the Uniform Commercial Code (UCC), Tex.Bus. & Com.Code Ann. § 3.501 (Vernon 1968) (hereinafter UCC).[3] This statute does not specifically refer to foreclosure proceedings which are governed by Tex.Prop.Code Ann. § 51.002 (Vernon Supp.1991). Neither statute requires that a debtor be notified of an exact amount due prior to foreclosure.

■ Even if a sum certain notice requirement exists outside of foreclosure, present-

ment can be waived. UCC § 3.511(b)(1) provides: "Presentment or notice or protest as the case may be is entirely excused when the party to be charged has waived it expressly or by implication either before or after it is due." Texas courts recognized the validity of waivers of presentment as early as the mid 1800's in *Sydnor v. Gascgoigne*, 11 Tex. 449, 456 (1854), and as recently as 1991 in *Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 893 n. 6 (Tex.1991). However, a waiver of presentment is effective only if it is "clear and unequivocal" and "must state specifically and separately the rights surrendered." *Shumway, supra* at 893.

In this case the Promissory Note, the Loan Agreement, and the Deed of Trust expressly and specifically waived notice. The Promissory Note Davis signed provided:

Each maker, surety, endorser and guarantor hereof severally expressly waives all notices, demands for payment, presentations for payment, notices of intention to accelerate the maturity, protest and notice of protest, and diligence in bringing suit against any party hereto, as to this Note and as to each, every and all installments hereof, and consent to as many extensions of time, and for such periods of time as may be made by holder, without notice and without releasing any of their liability hereon.

Similar waiver language in the Loan Agreement provided that in the event of default (defined as "failure or refusal to pay any amount of principal or interest on the Note, when such amount is due"), "all sums owing to [Panhandle] hereunder forthwith to become due and payable on demand without presentment, protest, or notice of any kind, all of which are hereby expressly waived. . . ."

The Deed of Trust contained this waiver language:

That in the event of default in the payment of any installment, principal or interest, of the note hereby secured, in accordance with the terms thereof, or of

---

**3.** "Presentment is a demand for acceptance or payment made upon the maker, acceptor, drawee, or other payor by or on behalf of the holder." UCC § 3.504(a) (Vernon 1968).

a breach of any of the covenants herein contained to be performed by the Grantors, then and in any of such events Beneficiary may elect, Grantors hereby expressly waiving presentment and demand for payment, to declare the entire principal indebtedness hereby secured with all interest accrued thereon and all other sums hereby secured immediately due and payable, and in the event of default in the payment of said indebtedness when due or declared due, it shall thereupon, or at any time thereafter, be the duty of the Trustee, or his successor or substitute as hereinafter provided, at the request of Beneficiary (which request is hereby conclusively presumed), to enforce this trust.

The court finds that Texoma did not breach any notice duty by failing to provide an overdue amount or a redemption amount to Davis prior to the foreclosure.

### *The 21–Day Notice Period*

■ Davis asserted that proper notice of the sale was not: (1) given to the debtor 21 days in advance of the sale, (2) filed 21 days before the sale, or (3) posted 21 days before the sale.

The Deed of Trust provided that the foreclosure would be held according to § 51.002 of the Texas Property Code. The 21–day notice period found in § 51.002(b) has been interpreted to include either the day of posting or the day of the foreclosure sale. *Newman v. Woodhaven Nat'l. Bank, Inc.,* 762 S.W.2d 374 (Tex.App.—Fort Worth 1988, no writ). Other interpretations mandate that the 21–day period exclude the day of sale but include the day of posting. *Hutson v. Sadler,* 501 S.W.2d 728 (1973).

The date of sale was Tuesday April 2, 1991.[4] Twenty-one days prior to April 2, 1991 (not including the April 2nd sale date) was March 12, 1991. The Notice of Trustee's Sale was mailed to Davis, filed and posted in Hutchinson County on March 12, 1991. The notice provisions of § 51.002 of the Texas Property Code were satisfied.

**4.** Tex.Prop.Code Ann. § 51.002(a) (Vernon Supp.1991) requires that a foreclosure sale be

### *Acknowledgment of the Substitute Trustees*

Davis challenged the authority of the Substitute Trustees to conduct the foreclosure sale because their appointments were not acknowledged on the same day they were signed. The first Substitute Trustee's (Mr. Dickey's) appointment was executed on May 5, 1991 and acknowledged on May 11th. The second Substitute Trustee's (Mr. Gassaway's) appointment was executed on May 11th, but the acknowledgment was dated May 5th.

Texas case law provides that the acknowledgment of an instrument at a date after the date of execution is not evidence of the date on which the instrument was actually executed. *Martin v. Skelton,* 567 S.W.2d 585 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.). The validity date of an appointment is determined by the Deed of Trust which, in this case, authorized the Holder of the note: "to appoint a substitute trustee, or a successor trustee, to act instead of the trustee named herein without other formality than the designation in writing of a substitute or successor trustee."

■ The first evidence of a writing was the execution date of the appointments. Therefore, the appointment of the first Substitute Trustee was valid on the date of execution, May 5, 1991 even though the instrument was later acknowledged and filed.

■ The appointment of the second Substitute Trustee was acknowledged six days before it was signed. The acknowledgment was invalid. However, since an acknowledgment was not required for the validity of the instrument, the defective acknowledgment had no effect on the appointment. Appointments are valid between the parties and all those with notice when the validity is not dependent on the acknowledgment. *Palmer v. Texas Tram & Lumber Co.,* 3 Tex.Civ.App. 469, 23 S.W.

conducted on the first Tuesday of the month.

38 (1893, no writ). The court finds both appointments valid irrespective of the recitals in the acknowledgment.

### Authority of the Substitute Trustees

█ Davis argued that the sale was invalid because the Notice of Trustee's Sale was signed by the first Substitute Trustee, Mr. Dickey, on March 7, 1991, but posted and filed when Mr. Gassaway was Substitute Trustee on March 12, 1991.

The court recognizes that "[w]hile it is the law that the power of appointment of a substitute trustee is to be strictly construed, it should not be so strictly construed that is [sic] will defeat the enforcement of honest obligations." *Brown v. Nat'l. Loan & Inv. Co.*, 139 S.W.2d 364, 367 (Tex.Civ.App.—El Paso 1940, writ dism'd judgmt cor.). Therefore, this court will not impose such a strict construction on the appointment of the Substitute Trustees.

Davis cites *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764 (Tex.1983) and *Faine v. Wilson*, 192 S.W.2d 456 (Tex.Civ. App.—Galveston 1946, no writ) which refer to the improper appointment of substitute trustees thereby leaving them without authority to conduct a foreclosure sale. The issue is not the validity of the appointments of Mr. Dickey and Mr. Gassaway but whether Mr. Gassaway had authority, within the power of his appointment, to post the Notice of Trustee's Sale signed by Mr. Dickey.

When Texoma appointed Mr. Dickey in writing as the Substitute Trustee for the Davis note on March 5, 1991, Mr. Dickey's appointment became final. On March 7, 1991, when Mr. Dickey prepared the Notice of Trustee's Sale and began the foreclosure process, he acted with the full authority of a trustee pursuant to the terms of the Deed of Trust.

On March 11 Texoma appointed Mr. Gassaway as Substitute Trustee. This transfer of power was also in writing and in accordance with the terms of the Deed of Trust. Mr. Gassaway became the Substitute Trustee with all the same rights and powers the original Trustee possessed and later passed to Mr. Dickey.

A Substitute Trustee does not have to repost notices of sale when such notices have been properly posted by a former trustee. *Tarrant County Savings Ass'n. v. Lucky Homes, Inc.*, 390 S.W.2d 473 (Tex. 1965); *Loomis Land & Cattle Co. v. Diversified Mortgage Investors*, 533 S.W.2d 420 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.). When he was a validly appointed Substitute Trustee, Mr. Dickey properly prepared the Notice of Trustee's Sale. There was no need for Mr. Gassaway to prepare another notice of sale.

The Deed of Trust mandated that the Trustee (or his substitute or successor) "sell the property ... with proper notices." Substitute Trustee Dickey, who signed the Notice of Trustee's Sale was, at the time he signed, the proper person to sign the document.

The Substitute Trustees' appointments were in all respects proper according to the Deed of Trust signed by Davis. Each Substitute Trustee had the authority to act when he acted. The court finds the foreclosure sale valid.

### Tolling the Statute of Limitations

█ The court now addresses Davis' limitations arguments. The Davis Note was signed on May 15, 1986. The final installment on the note was due May 16, 1987 and was not paid. The statute of limitations on installment notes begins to run on each installment when it becomes due. *Stille v. Colborn*, 740 S.W.2d 42 (Tex.App.—San Antonio 1987, writ denied); *Gonzales v. Gonzales*, 728 S.W.2d 446 (Tex.App.—San Antonio 1987, no writ). The four-year limitations period began to run on May 16, 1987, the due date of the final installment, and, normally, would have ended on May 16, 1991. Tex.Civ.Prac. & Rem.Code Ann. § 16.004 (Vernon 1986). Texoma contends that the Agreement acted to toll the statute of limitations period for 60 days.

An acknowledgment of the justness of a claim that appears to be barred by limitations is not admissible in evidence to

defeat the law of limitations if made after the time that the claim is due unless the acknowledgment is in writing and is signed by the party to be charged. Tex.Civ.Prac. & Rem.Code Ann. § 16.065 (Vernon 1986).

The Agreement is admissible because it was in writing signed by both Davis and Texoma. William B. Griffin signed for himself individually and for Davis Chevrolet, Inc. Therefore the party to be charged, Davis Chevrolet, Inc., signed the document. The Agreement was a formal document, typewritten and subscribed, with initialed handwritten changes. It constituted an acknowledgment of the justness of the debt.

Case law mandates that such agreements be clear, unequivocal, acknowledge the justness of a claim, and express a willingness to pay same. *Stefek v. Helvey*, 601 S.W.2d 168 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). Unlike the facts in *Stefek* wherein a notation on a check was found insufficient to toll the statute of limitations, the Agreement meets this test.

■ Does the admissible Agreement estop Davis from asserting the statute of limitations? In *Zimmerman v. First Am. Title Ins. Co.*, 790 S.W.2d 690 (Tex.App.—Tyler 1990, writ denied) the court held that "A" can be estopped from asserting the limitations defense if "B's" conduct induced "A" to refrain from bringing his action within the applicable time. Applying this principle to the facts at hand, Texoma and Davis signed an Agreement that Davis would pay one of two specified sums. In consideration Texoma agreed not to sue Davis and to allow Davis to remain on the property for an additional 60 days. It was during this negotiated forbearance period that Davis filed its Chapter 11 petition and sought to prevent Texoma from finalizing its foreclosure by pleading the expiration of the statute of limitations. Davis' limitations defense is estopped since the Agreement induced Texoma to refrain from suit within the remaining limitations time peri-

od. *See El Paso Development Co. v. Berryman*, 769 S.W.2d 584 (Tex.App.—Corpus Christi 1989, writ ref'd) (citing *Walker v. Hanes*, 570 S.W.2d 534 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

It was during the extended limitations period that Davis filed its Chapter 11 petition. The Bankruptcy Code, § 108 further tolls the limitations period until the later of one of two occurrences in the Davis Bankruptcy. Section 108 provides:

Except as provided in section 524 of the title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against a debtor, ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspensions of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination, or expiration of the stay under section 362, 922, 1201 or 1301 of this title, as the case may be, with respect to such claim.

Since the limitations period ran by its terms 60 days after May 16, 1991 on July 15, 1991, the requirements of subsection (1) were satisfied. However, the requirements of § 108(a)(2) have not been met. Therefore, pursuant to § 108 of the Bankruptcy Code, the limitations period will expire upon the occurrence of an event set forth in § 108(a)(2).

### Conclusion

The foreclosure sale was valid. Davis did not redeem the property in accordance with the Agreement. The automatic stay of § 362 should be lifted to allow Texoma to secure possession of the property upon which it foreclosed.

JUDGMENT ACCORDINGLY.[5]

---

**5.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to

---

Bankruptcy Rule 7052. This Memorandum of Opinion shall be published.