**John Dee SANDERS and Jeff Fisher, Appellants**

v.

**Zellena P. SHELTON; Leo E. Foust, Trustee; and W.G. Tingley, Jr., Substitute Trustee, Appellees**

No. 03–97–00022–CV.

Court of Appeals of Texas, Austin.

May 29, 1998.

Rehearing Overruled July 2, 1998.

Jo Ann Merica, Phillips and Merica, P.C., Austin, for Appellants.

Kristin K. Proctor, Law Offices of Edwin J. (Ted) Terry, Austin, for Leo E. Foust, Trustee.

William F. Turman, Austin, for Zellena Shelton & W.G. Tingley, Substitute Trustee.

Before POWERS, ABOUSSIE and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

Zellena P. Shelton, Leo E. Foust, and W.G. Tingley, Jr., recovered summary judgment that John Dee Sanders and Jeff Fisher take nothing on certain of their causes of action [1] arising from a sale of real property by a trustee acting under a power of sale given in a deed of trust. Sanders and Fisher appeal. We will affirm the summary judgment.

## THE CONTROVERSY

Donald Shelton executed and delivered a deed of trust to secure his $9000 debt to his former wife Zellena Shelton. The deed of trust describes certain real property belonging to Donald Shelton, designates Leo E. Foust trustee, and requires that the trustee "shall give notice of [any] foreclosure sale as provided by the Texas Property Code as then amended." Donald Shelton defaulted on his obligation. W.G. Tingley, a substitute trustee, gave notice that he would sell the property at the Travis County Courthouse "between the hours of ten o'clock a.m. and four o'clock p.m. on the first Tuesday in January next."

Just before ten o'clock a.m. on the day of the sale, John Sanders and Jeff Fisher purchased the property from Donald Shelton for $1000 and received Shelton's conveyance of the property purportedly "free and clear of any mortgage liens."

In the summary judgment documents, Sanders and Fisher swore they (and others) arrived at the courthouse by ten o'clock a.m. on the day of the trustee's sale, remained there until four o'clock p.m., and were never able to locate the sale. The summary-judgment evidence indicates that Tingley sold the property on the east steps of the courthouse at 10:58 a.m. on January 7, 1992 to Zellena Shelton for $9000.

Sanders and Fisher sued Zellena Shelton, Leo E. Foust, and W.G. Tingley, Jr., alleging that the trustee's sale was invalid for various reasons.[2] Sanders contended, among other things, that the trustee violated terms of the deed of trust, that appellees conspired to prevent them from bidding at the sale, that appellees intentionally chilled bidding at the sale, and that a grossly inadequate sales price coupled with irregularities at the sale made the sale voidable. Sanders requested compensatory damages and asked the court to set aside the sale. Shelton denied the allegations and filed a motion for summary judgment requesting that Sanders take nothing by his lawsuit. Sanders then filed a cross-motion for summary judgment, requesting in the motion that the court set aside the foreclosure sale and declare Sanders and Fisher the owners of the property.

The trial court rendered partial summary judgment in favor of Shelton with regard to these two particular claims by Sanders: (1) that the trustee's sale should be set aside because the trustee's notice of sale did not comply with the requirements of the deed of trust and underlying state law; and (2) that the sale was voidable because irregularities in the sale contributed to a grossly inade-

---

1. The trial court granted partial summary judgment on two of the plaintiffs' causes; the remaining claims were severed.

2. For convenience, we will refer to appellants collectively as "Sanders" and appellees collectively as "Shelton."

quate sales price. The remaining claims were severed making this a final judgment from which Sanders appeals.

Sanders brings two points of error. In his first point of error, he contends the trial court erred by granting Shelton's summary judgment because (1) the trustee's notice of sale did not comply with the terms of the deed of trust and Texas Property Code section 51.002, rendering the sale fatally defective and void, *see Slaughter v. Qualls,* 139 Tex. 340, 162 S.W.2d 671, 674–75 (1942) (foreclosure sale ineffective unless trustee complies strictly with terms of deed of trust); *Durkay v. Madco Oil Co.,* 862 S.W.2d 14, 17 (Tex.App.—Corpus Christi 1993, writ denied); and (2) Shelton failed to negate Sanders's contention that irregularities at the sale contributed to a grossly inadequate sales price. *See American Sav. & Loan Ass'n v. Musick,* 531 S.W.2d 581, 587 (Tex.1975); *Pentad Joint Venture v. First Nat'l Bank,* 797 S.W.2d 92, 96 (Tex.App.—Austin 1990, writ denied) (irregularities at sale coupled with grossly inadequate sales price constitute grounds for setting aside sale).

In his second point of error, Sanders contends the trial court erroneously denied his cross-motion for summary judgment because he established as a matter of law that the sale should be set aside.

## STANDARD OF REVIEW

The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

## DISCUSSION AND HOLDINGS

■ Texas law recognizes that a mortgagee is under a duty to avoid affirmatively deterring third party bids by acts or statements made before or during the foreclosure sale, but is under no duty to take affirmative action, beyond that required by statute or deed of trust, to secure a fair sale. *See Pentad,* 797 S.W.2d at 96–97 (citing *Tarrant Sav. Ass'n v. Lucky Homes, Inc.,* 390 S.W.2d 473, 476 (Tex.1965) and *Biddle v. National Old Line Ins. Co.,* 513 S.W.2d 135, 138 (Tex. Civ.App.—Dallas 1974, writ ref'd n.r.e.)).

### Statutory Provisions

Before 1889, a trustee's sale under a power of sale given in a deed of trust were apparently not regulated save by provisions in the instrument itself. In that year, the legislature acted to regulate such sales in several particulars. One requirement was that the mortgaged property be sold, in the county where the property was located, "between the hours of 10 o'clock a.m. and 4 o'clock p.m. of the first Tuesday in any month." The second requirement was that the trustee give advance notice of the "time and place" of the proposed sale, as had been previously required for judicial sales. Act approved March 21, 1889, ch. 118, Tex. Gen. Laws 1889, 1171; Tex.Rev.Civ. Stat. Ann. arts. 2303, 2309 (West 1979).

The Texas Property Code was amended in 1988 to add new requirements as indicated by the italicized language below:

(a) A sale of real property under a power of sale conferred by a deed of trust . . . must be a public sale at auction held between 10 a.m. and 4 p.m. of the first Tuesday of a month.

(b) Notice of the sale, which *must include a statement of the earliest time at which the sale will occur,* must be given at least 21 days before the date of the sale.

(c) *The sale must begin at the time stated in the notice of sale or not later than three hours after that time.*

Act of May 15, 1987, 70th Leg., R.S., ch. 540, § 1, 1987 Tex. Gen. Laws 2174, 2174 (codified at Tex. Prop.Code Ann. § 51.002 (West 1995) (emphasis added)).

### Inadequate Notice

In the present case, the trustee's notice stated that this sale would occur "between the hours of ten o'clock a.m. and four o'clock p.m." We are asked to decide if the trustee

sufficiently identified the time of the proposed foreclosure sale under the amended Property Code.

Appellants supplied legislative history suggesting that the intent of the legislature was to facilitate prospective bidders' ease of access to foreclosure sales. The amendments accomplished this by shortening from six hours to three hours the "window" during which a potential sale may occur. No longer must a buyer stake out the courthouse steps for six hours to locate a foreclosure sale. Although all sales must still occur sometime between ten o'clock a.m. and four o'clock p.m., the new three-hour window means that ten o'clock may not always be the earliest hour at which a sale may occur. All sales must begin not later than three hours after the earliest time stated in the notice. Some might begin at eleven o'clock a.m., others at noon and still others at one o'clock p.m. The amendment provides that the notice of sale shall state the earliest time at which the sale will occur, so a prospective buyer knows when to arrive. What the amendment fails to do is to require notice be given of the new three-hour window.

Before the 1988 amendments, the trustee's notice sufficiently identified the "time" of the proposed sale merely by stating that the sale would take place on a particular Tuesday "between ten o'clock a.m. and four o'clock p.m.," the statutory period of time during which the sale might lawfully take place; and "[i]t was not necessary that the trustee's notice of sale specify an exact hour when the sale would be held." *Mabry v. Abbott*, 471 S.W.2d 442, 445 (Tex.Civ.App.—Waco 1971, writ ref'd n.r.e.).

Sanders asserts more is required after the 1988 amendments to the Texas Property Code. Sanders and the dissent interpret section 51.002(b) as amended to require a verbatim statement that a designated hour is "the earliest time this sale will occur." Although the sufficiency of a foreclosure notice is frequently litigated, no court has addressed the change in notice, if any, effected by the 1988 amendments to section 51.002(b) & (c).

■ We decline to read the statute as literally as the dissent. The notice given here makes it perfectly clear that the sale will not occur *before* 10 o'clock a.m. No more is required. Magical language need not be inserted to accomplish the amendment's purpose of informing the public of the earliest hour the sale will begin. This does not undermine the change effected by the 1988 amendment, which now requires the sale to occur within three hours of the earliest time stated in the notice of sale. In the instant cause if this sale had occurred after one p.m., it would not have met the statutory requirement of newly added section 51.002(c). But that section does not require the notice to *state* that the sale must begin within three hours of the time announced in the notice; it only requires that the sale actually begin not later than three hours after the earliest time stated. Admittedly the better practice would be to give notice of the "three-hour window." [3] A cautious trustee might add the statutory language, "ten o'clock a.m. is the earliest time that the sale will occur," but these words would give prospective bidders no more information about the beginning time of the sale than the notice actually given here.

In *First State Bank v. Keilman*, 851 S.W.2d 914 (Tex.App.—Austin 1993, writ denied), the debtor alleged the notice failed to sufficiently inform prospective bidders on several grounds—listing legal description rather than street address and obscuring phone number and address of seller. The notice of sale stated that the sale would occur "between ten o'clock a.m. and one o'clock p.m." There was no explicit statement in the notice that ten o'clock is the earliest time at which the sale will occur. Admittedly section 51.002(b) was not the focus of Keilman's complaint, but this Court held the notice given there sufficient under Texas law although the deed of trust did not have an explicit statement of "the earliest time the sale would begin." We declined to impose additional requirements on the mortgagee. *Keilman*, 851 S.W.2d at 923.

The dissent asserts that the legislature intended by its amendments to require a

---

3. Appellants do not complain of that failure in their points of error.

more specific time period in which a foreclosure is to be conducted. We respond that this was effected by the "three-hour window" requirement of section 51.002(c). If it was also the intent of the legislature to require *notice* of this more specific time period, this was not accomplished by either section 51.002(b) or (c). Read separately or together, they do not require that *notice* be given of the three-hour window. This would have been the best way to effectuate the legislature's intent, but the plain language of the amendment fails to require such notice. Certainly a statement of the "earliest hour at which a sale will occur" does not define a more specific time period. It adds nothing to the notice that was actually given here.

In the present case, the notice stated that the sale would occur between ten a.m. and four p.m., and the sale actually occurred at 10:58 a.m. Sanders does not allege that he was lulled into showing up late by the "defective" notice; the summary judgment evidence includes sworn testimony that appellees were present at 10:00 a.m. but could not locate the sale. We hold the notice and the sale substantially complied with sections 51.002(b) and (c) as amended. Therefore, we overrule part A of point of error one regarding inadequacy of the notice.

### Inadequate Price and Other Irregularities

■ Inadequacy of consideration alone does not render a foreclosure sale void if the sale was "legally and fairly made." *Musick*, 531 S.W.2d at 587; *Tarrant Sav. Ass'n*, 390 S.W.2d at 475. There must also be evidence of some irregularity, though slight, that caused or contributed to a sale for a grossly inadequate price. *See Pentad*, 797 S.W.2d at 96, (citing *Musick*, 531 S.W.2d at 587).

The foreclosure sale price was $9000. Sanders offered the affidavit of Steven E. Becker who testified that the fair market value of the property on the date of foreclosure was $59,000. Appellants allege that because Shelton failed to offer any summary-judgment proof to controvert their summary-judgment evidence of value, she failed to negate this element of their second cause of action for wrongful foreclosure.

Shelton avers that appellants are estopped from claiming the sales price of $9000 was "grossly inadequate" by judicial pleadings they filed in Donald Shelton's bankruptcy proceeding. To counter the trustee's challenge of Shelton's transfer of this property for inadequate consideration, Sanders and Fisher filed responses that they paid "value of at least $11,864.62" which was "reasonably equivalent value" for the property. Shelton argues that Sanders's admission in bankruptcy court that somewhat less than $12,000 is a reasonably equivalent value for this property estops his claim that $9000 is a "grossly inadequate" sales price.

Shelton is entitled to summary judgment if she can negate *either* element of Sanders's cause of action: a grossly inadequate sales price or any irregularity in the sale. We need not determine if Shelton has negated the element of a "grossly inadequate sales price" as a matter of law because we hold that she has negated as a matter of law all five irregularities alleged in appellants' pleadings.

Sanders alleges the following irregularities: (1) that the trustee refused to disclose to appellants the pay-off required to satisfy Shelton's debt; (2) the substitution of trustees was not disclosed; (3) the trustee failed to advise appellants of the time of sale; (4) the Trustee conducted the sale in such a manner that the appellants could not locate the sale on the courthouse steps at the appointed hour; and (5) the Trustee was instructed by Shelton to insure that she was the highest bidder.

■ As to the first "irregularity," we hold that the Trustee owed no duty to appellants to provide information regarding the payoff amount of the underlying obligation. Section 51.002 does not require that a *debtor* receive notification of the payoff amount prior to foreclosure. *In re Davis Chevrolet, Inc.*, 135 B.R. 29, 32 (Bkrtcy.N.D.Tex.1992). Sanders was not even the debtor here, and the trustee owed him no such duty as a matter of law. Second, the power to appoint a substitute trustee arises through the express authority of the deed of trust; Sanders does not allege that Shelton failed to comply with the requirement of the deed of trust in

substituting trustees. Neither the deed of trust nor the statute grants the debtor the right to be informed of a substitution of trustees. Sanders as a stranger to the underlying transaction had no such right. As to the third complaint, in overruling Part A of this point of error, we have held that there was no irregularity in the notice regarding the time of the sale. Fourth, Sanders's failure to locate the sale on the courthouse steps does not present any specific irregularity in light of the uncontradicted summary judgment evidence that the sale occurred at 10:58 a.m. on the east courthouse steps on the day noticed for the sale.[4] When the property is sold on the courthouse steps, the trustee is only charged with following the provisions of the deed of trust and section 51.003 of the Property Code. He need not wait until he is the only seller; he need not postpone the sale until the mortgagor is present, much less await the appearance of some stranger to the transaction. *Keilman,* 851 S.W.2d at 924. Finally, even if it is true that Shelton instructed Turman, her agent, to be the highest bidder at the sale, this is not an irregularity. In *Lucky Homes,* the supreme court held that an instruction from an employee of the mortgagee to attend the sale and bid a specific sum did not constitute an irregularity. 390 S.W.2d at 476; *see also Charter Nat'l Bank v. Stevens,* 781 S.W.2d 368, 371–74 (Tex.App.—Houston [14th Dist.] 1989, writ denied). In light of our holding in *Keilman,* that the trustee is under no duty to take affirmative action beyond that required by statute or the deed of trust to ensure a

fair sale, we conclude as a matter of law that the summary-judgment record contains no evidence of an irregularity that would void this foreclosure sale. We overrule Part B of the first point of error.

### Objections and Special Exceptions

 In the final part of his first point of error, Sanders alleges the trial court erred in overruling his special exceptions and objections to Shelton's summary-judgment evidence. The admission or exclusion of evidence rests with the sound discretion of the trial court. *New Braunfels Factory Outlet Ctr., Inc. v. IHOP Realty Corp.,* 872 S.W.2d 303, 310 (Tex.App.—Austin 1994, no writ). To obtain a reversal of the judgment, appellant must first show that the trial court did in fact commit error, and second that the error was reasonably calculated to cause and probably did cause the rendition of an improper verdict. *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989). There is no reversible error if the evidence in question is cumulative or is not controlling on a material issue dispositive of the case. *Id.*

 In the trial court, Sanders raised nine special exceptions or objections.[5] However, on appeal the only complaints of error alleged are that without the improperly admitted evidence there would be no competent summary-judgment evidence that (1) Tingley completed the foreclosure or (2) that Sanders never tendered an offer of cure. Sanders's pleadings do not raise the complaint that the foreclosure never occurred, and there is com-

---

4. The affidavits of various individuals stating they were unable to locate Leo Foust, who they mistakenly believed was conducting the sale, do not directly contradict the summary-judgment evidence that the sale occurred on the courthouse steps on the date and at the time specified.

5. Sanders excepted and objected to the affidavits of William Turman and W.G. Tingley in whole as statements of interested parties, not otherwise credible and free from contradictions and inconsistencies. Sanders raised the same objections to the affidavit of Leo Foust. Sanders objected in particular to Tingley's statement that a caller made no tender of payment of the note from Donald Shelton to Zellena Shelton, claiming it was vague and a legal conclusion. Additionally Sanders objected that Tingley was not competent to make the conclusory statement that he completed the foreclosure. Sanders excepted and

objected to particular statements in Foust's affidavit that the substitution of trustees was not done for an illicit purpose, that Foust did not take steps to prevent any party from properly purchasing the property through normal foreclosure procedures, and that no party made a formal written tender of the amount due under the Shelton note, claiming all of these were mere conclusory statements. Additionally, Sanders objected to particular statements in the Foust affidavit that no caller ever advised him that he represented Donald Shelton or intended to cure the defects or ever tendered an offer of cure, alleging these were conclusory and vague. And Sanders raised a hearsay objection to the statement that Sanders's attorney represented that his client would use up to $40,000 to pursue the property in question.

petent summary judgment evidence in the form of the foreclosure deed signed by Tingley that it did occur. Indeed, if the foreclosure sale had not occurred Zellena Shelton would never have sought to evict Donald Shelton and Donald Shelton would never have sought to temporarily enjoin his eviction, two earlier actions in this cause. The issue of cure is not dispositive of any complaint determined by this partial summary judgment, which is limited to the issues of alleged defect in the notice of sale and the alleged inadequate sales price coupled with an irregularity. We hold that the appellant has failed to meet his burden of showing that any error in admitting the summary-judgment evidence complained of was reasonably calculated to and probably did cause the rendition of an improper judgment in this cause.[6] *See Gee,* 765 S.W.2d at 396.

Having rejected all the complaints raised, we overrule the first point of error complaining of the trial court's error in granting Shelton's motion for partial summary judgment.

Because we conclude that the trial court properly granted partial summary judgment in favor of Shelton, we overrule point of error two complaining of the trial court's denial of Sanders's opposing motion for summary judgment asking that the sale be set aside and appellants be declared owners of the property.

### CONCLUSION

We affirm the trial court's order granting partial summary judgment in favor of Shelton on Sanders's claim of wrongful foreclosure due to defective notice or gross inadequacy of sales price coupled with irregularities in the sale, and affirm its order denying Sanders's cross-motion for summary judgment.

POWERS, Justice, dissenting.

The deed of trust, from which the trustee derived his power of sale, expressly required notice of the foreclosure sale "as provided by the Texas Property Code." I would hold the

trustee's notice insufficient for failing to comply with the statutory requirement that the notice "include a statement of the earliest time at which the sale will begin." Tex. Prop.Code Ann. § 51.002(b). The trustee's failure to comply with section 51.002(b) of the Code renders the sale void in my view as a matter of law. *See Houston First Am. Sav. v. Musick,* 650 S.W.2d 764, 768 (Tex.1983); *Slaughter v. Qualls,* 139 Tex. 340, 162 S.W.2d 671, 674–75 (1942).

### WHY THE NOTICE WAS INSUFFICIENT UNDER SECTION 51.002(b)

Before and after 1988 a statute has required that a trustee's sale "be a public sale at auction held between 10 a.m. and 4 p.m. of the first Tuesday of a month" and that "notice" of the sale be posted in three public places for three consecutive weeks before the sale. *See* Revised Statutes, 39th Leg., R.S., § 1, art. 3810, 1925 Tex.Rev.Civ. Stat. 1, 1022–23 (since repealed and amended). Under this statute the posted notices sufficiently identified the time of the proposed sale merely by stating the sale would take place on a specified Tuesday between the authorized hours of ten o'clock a.m. and four o'clock p.m.; and "[i]t was not necessary that the trustee's notice of sale specify an exact hour when the sale would be held." *Mabry v. Abbott,* 471 S.W.2d 442, 445 (Tex.Civ. App.—Waco 1971, writ ref'd n.r.e.). Effective January 1, 1976, written notice was required to be furnished the debtor in addition to the notices posted in three public places. *See* Act of June 21, 1975, 64th Leg. R.S., ch. 723, § 1, 1975 Tex. Gen. Laws 2354 (Tex. Civ. Stat. Ann. art. 3810, since repealed and codified at Tex. Prop.Code Ann. § 51.002). These provisions were incorporated without substantial change in the Texas Property Code. *See* Tex. Prop.Code Ann. § 51.002(a), (b).

The Code was amended, effective January 1, 1988, however, by the addition of two new requirements: The first pertained to the *contents of the notice of the proposed sale;* thenceforth the trustee's notice "must include

---

**6.** We note that evidence regarding the tender of an offer of cure may be relevant to other causes of action severed from this partial summary judgment.

a statement of the earliest time at which the sale will begin." The second requirement pertained to the trustee's *conduct of the sale* between the hours of ten o'clock and four o'clock p.m.: thenceforth "[t]he sale must begin at the time stated in the notice of sale or not later than three hours after that time." Tex. Prop.Code Ann. § 51.002(b), (c). The controlling issue before us is whether the trustee's notice complied with the first requirement.

Section 51.002(b) comes to us with a presumption: the legislature intended that section 51.002(b) *change* the trustee's existing legal obligation with regard to the contents of his notice of sale, a presumption that may be overcome only by persuasive considerations explaining why the legislature did *not* intend such a change. *See American Sur. Co. of New York v. Axtell,* 120 Tex. 166, 36 S.W.2d 715, 719 (1931); 1A *Sutherland Statutory Construction* § 22.30 (5th ed.1993). Unless such persuasive considerations are forthcoming, the presumption stands that the contents of the notice validated in *Mabry v. Abbott* would no longer suffice. Specifically, after January 1, 1988, the trustee must include in his notice of sale "a statement of the earliest time at which the sale will begin;" and under the requisite presumption his notice will no longer be sufficient (as it was in *Mabry*) if it states only that the property will be sold between the legally authorized hours of ten o'clock a.m. and four o'clock p.m. No persuasive considerations have been offered to explain why the legislature did not intend this change in the trustee's legal obligations respecting his notice of sale.

The trustee's notice in the present case stated only that he intended to sell the property "between the hours of ten o'clock a.m. and four o'clock p.m. on the first Tuesday in January next." The notice contains no *express* "statement of the earliest time at which the sale will begin," in compliance with section 51.002(b). Shelton contends, however, that the trustee's notice *complied* with section 51.002(b) because the notice *did* state "the earliest time at which the sale will begin." He reasons as follows: By stating that the sale would be held between the authorized hours of ten o'clock a.m. and four

o'clock p.m., the notice *implied* that the earliest time the sale would begin was ten o'clock a.m.

I find Shelton's theory the opposite of persuasive. He asks us to believe the trustee actually had the idea to sell the property at ten o'clock a.m. or within three hours of that time, as section 51.002(c) required; but the trustee consciously decided not to say as much in his notice. Being thrifty in his language, the trustee wished it to be *implied* that the earliest time the sale would begin was ten o'clock a.m.—an implication he intended the reader to draw from the trustee's statement that he would sell the property "between the hours of ten o'clock a.m. and four o'clock p.m." I take an opposite view. It is obvious to me that the trustee never composed his notice with the idea that his words implied what Shelton now attributes to them. The trustee's notice states nothing more than what the law has required in trustees' notices since 1889: a statement that the property would be sold during the legally authorized period between ten o'clock a.m. and four o'clock p.m. More was required by section 51.002(b) if the statute means anything at all. Shelton's theory originated in the press of litigation, not in the trustee's mind when he prepared his notice of sale. The theory is no more than a device to retrieve the trustee's chestnuts from the fire after he patently failed to comply with what section 51.002 so plainly required.

On a more prosaic ground, Shelton's theory is impermissible. The trustee stated in his notice that he would sell the property "*between* the hours of ten o'clock a.m. and four o'clock p.m." (emphasis added). Legal and ordinary usage correspond as to the meaning of the preposition "between." It implies that the sale "will begin," in the words of the statute, at some *unspecified* point *in the interval* between ten o'clock a.m. and four o'clock p.m. That is the very meaning of the word "between." Indeed, the word "between" excludes any implication that the sale might begin at ten o'clock a.m. *See* "between," *Webster's Third New International Dictionary* 209 (Philip B. Gove ed., 1986) ("Between" refers to the time interval that separates); *Black's Law Dictionary* 621

(6th ed. 1990) ("Between" excludes each extremity unless expressly included); *cf. Shelton v. Jackson,* 20 Tex.Civ.App. 443, 49 S.W. 415, 416 (Fort Worth 1899, writ ref'd) ("Between" excludes first and last day unless expressly included).

More importantly, Shelton's theory nullifies the effect and purpose of the January 1, 1988 amendment. The new requirement means absolutely nothing if we hold, as the majority do, that a bare statement of the legally permissible hours of sale always implies *as a matter of law* that the sale *will* begin at ten o'clock a.m.—the earliest possible legal hour. Nothing new has been required of the trustee by that reasoning: the old required statement satisfies as a matter of law the new statement required by the amendment of section 51.002(b). That amendment makes no change at all in the trustee's legal obligations touching the contents of his notice; the amendment is nothing more than an ornament on the statute books. I cannot accept that the legislature intended as much.

## THE MAJORITY VIEW

The appeal puts in issue a very important question of statutory construction that will govern in all instances where a trustee purports to exercise a power of sale under a deed of trust that requires compliance with the provisions of the Texas Property Code. Our opinion appears to be the first construing section 51.002(b). Those affected should have, it seems to me, a clear-cut exposition of what the statute means and what is necessary to satisfy it, *if* it requires anything at all of a trustee.

Section 51.002(b) of the Code, added by the 1988 amendment, declares that the trustee's notice *"must* include a statement of the earliest time at which the sale will begin." (Emphasis added.) I find in the majority discussion two contrary themes regarding the statute. The first is that section 51.002(b) is directory and not mandatory, as indicated by the majority's reasoning that "[a] cautious trustee might" wish to comply literally with what the section facially requires, but no adverse legal consequences

follow from omitting "a statement of the earliest time at which the sale will begin." The majority have not stated why they find section 51.002(b) merely directory and not mandatory. The ordinary meaning of the word "must" is mandatory in effect and should be construed accordingly unless a contrary construction is necessary to effectuate the legislative purpose. *Inwood North Homeowners' Ass'n v. Meier,* 625 S.W.2d 742, 743–44 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). I believe section 51.002(b) is patently mandatory. If I am right, then the majority's decision violates the basic rule of statutory construction that we must give effect to every part of a statute if reasonably possible and we may not adopt a construction that will render any part of the statute inoperative, superfluous, or without legal effect. *See Ex parte Pruitt,* 551 S.W.2d 706, 709 (Tex.1977); *Perkins v. State,* 367 S.W.2d 140, 146 (Tex.1963); *Spence v. Fenchler,* 107 Tex. 443, 180 S.W. 597, 601 (1915); 2A *Sutherland Statutory Construction* § 46.06 (5th ed.1993). If I am wrong, then we should state plainly the legislative purpose that requires a construction that section 51.002(b) is merely directory notwithstanding the meaning of the word "must" in ordinary usage.

The second theme in the majority opinion apparently assumes that section 51.002(b) is mandatory but the trustee's notice *did* include the statement required by that statute. In this connection, the majority adopt Shelton's theory: by stating the sale would take place between ten o'clock a.m. and four o'clock p.m., the trustee *impliedly* stated that ten o'clock a.m. was "the earliest time at which the sale will begin." I have given above my reasons for rejecting the implication and the theory that it satisfies section 51.002(b). I should add that it is immaterial in my view that the sale actually took place within three hours of ten o'clock a.m. If the trustee's notice was insufficient under section 51.002(b), for failing to include an express statement of "the earliest time at which the sale will begin," then the sale was void ab initio.[1]

---

1. A trustee has no power to sell the debtor's property except in strict compliance with the

I should also add that I do not understand the majority's concentration on Code section 51.002(c) and their statement that the trustee's sale satisfied the purpose of section 51.002(b) by selling the property within the three-hour "window" required by section 51.002(c). The majority's rationale depends on the statutory premise: that the trustee's notice actually contained a statement of "the earliest time at which the sale will begin," the starting time of the three-hour "window." Thus one must return inevitably to the controlling issue of whether the notice *did* contain such a statement. I believe it did not for the reasons given previously.

I confess that I have interpreted "literally," as the majority contend, the provisions of section 51.002(b). The language of that statute, standing alone and in context, is easy to understand and free of ambiguity. The majority have not suggested, and I cannot imagine, how the literal meaning of section 51.002(b) leads to absurd or other consequences destructive of the legislature's manifest intention and purpose in its enactment of section 51.002(b)—a purpose of requiring *more specific* notice of when the sale might begin within the ten o'clock a.m. to four o'clock p.m. period legally authorized for such sales. We may not speculate or assume the legislature did *not* intend what it stated so plainly in section 51.002(b). It is our *duty* in such circumstances to adopt and enforce the literal meaning. *See McKinney v. Blankenship*, 154 Tex. 632, 282 S.W.2d 691, 698 (1955); 2A *Sutherland Statutory Construction* § 46.07 (1991).

I respectfully dissent.

---

deed of trust. *See Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 769 (Tex.1983); *Slaughter v. Qualls*, 139 Tex. 340, 162 S.W.2d 671, 675 (1942) (where trustee fails to comply strictly with terms of deed of trust, foreclosure sale is void). Thus, it has long been said that "A purchaser under a power [of trust] purchases at his peril...." *Bowman v. Oakley*, 212 S.W. 549, 552 (Tex.Civ.App.—Fort Worth 1919, writ ref'd), *cited with approval in Slaughter v. Qualls*, 162 S.W.2d at 675.