COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-03-001-CV
 
WILLIAM POWELL           
           
           
           
           
        APPELLANT
V.
IRA STACY AND LOUISE STACY       
           
           
           
    APPELLEES
D/B/A SAND DOLLAR PROPERTIES
------------
FROM THE 48
TH DISTRICT COURT OF TARRANT
COUNTY
------------
OPINION
------------
This appeal involves a suit to set
aside a foreclosure sale of real property pursuant to a deed of trust. Appellant
William Powell brings five issues challenging the trial court's conclusions of
law that (1) all required statutory notices were given, (2) Powell was given an
adequate opportunity to cure, and (3) the foreclosure sale was valid, and the
trial court's implied conclusions that the foreclosure sale should not be set
aside for inadequacy of consideration and the excessive principal and usurious
interest listed in the notice of foreclosure was not an irregularity in the
procedure that would render the foreclosure invalid. We affirm.
Background Facts
Powell and Milton Stacy were equal
owners of and partners in Lakeside Motor Sales, a used car business. Powell and
Milton purchased the property at 8001 Jacksboro Highway for the business. Powell
also used a trailer on the property as his residence. When Powell and Milton
bought the property, each signed the note and deed of trust; the debt was
further secured by a vendor's lien in the deed. In August 1999 Milton's parents,
appellees Ira and Louise Stacy d/b/a Sand Dollar Properties, purchased the note
and deed of trust.
In January 2000, Powell and Milton
missed a payment on the note. Accordingly, the Stacys' attorney sent a notice of
delinquency to Powell and Milton at 8001 Jacksboro Highway. That delinquency was
subsequently cured. On May 15, 2000, the Stacys' attorney sent a notice of
acceleration of all amounts due on the note, which the Stacys later withdrew
because their attorney discovered Powell was living on the property, thus
requiring them to send a homestead notice. See Tex. Prop. Code Ann. §
51.002(d) (Vernon 1995). On May 31, 2000, the Stacys' attorney sent Powell and
Milton a letter indicating that the note was again past due and stating that the
entire unpaid principal balance of the note, plus all accrued and earned
interest, would become due if the past due amounts were not paid in full by June
20, 2000. The letter also indicated that payment arrangements could be made
through the attorney. The letter contained a statement of principal owed on the
note that was more than the amount owed and an interest rate in excess of the
rate set forth in the note. Powell hired an attorney, who wrote the Stacys'
counsel a letter asking for clarification of the amount owed on the note. The
Stacys did not respond, and neither Powell nor Milton made any further payments
on the note.
The Stacys did not accelerate the
debt in June because they learned Powell had a potential buyer for the property.
They instructed their attorney to wait on acceleration and foreclosure to see if
Powell and Milton could sell the property. However, in November 2000, the Stacys
instructed their attorney to send notice of acceleration and foreclosure on the
debt.
On November 6, 2000, the Stacys'
attorney sent a notice of acceleration and foreclosure to Powell and Milton at
8001 Jacksboro Highway. The notice again contained a statement of principal owed
that was more than the amount owed and usurious interest in excess of what was
actually owed. Powell did not receive the notice. He was no longer living on the
property by then, but he never gave the Stacys a change of address, and 8001
Jacksboro Highway was the last known address they had for him. The Stacys did
not know until November 11 or 12 that Powell had been living elsewhere. In
addition, Powell was in jail from October 2000 to January 2001. The notice of
acceleration and foreclosure was not sent to Powell's attorney.
The Stacys purchased the property
at the foreclosure sale on December 5, 2000. Ira Stacy said he was not sure if
anyone else bid for the property. After the Stacys bought the property, they
leased it to Milton with an option to purchase. Milton has occupied the property
continuously since the Stacys purchased the note.
Analysis
Standard of Review
Powell does not challenge the trial
court's findings of fact; however, he does contend the trial court's conclusions
of law are incorrect based on the facts. Conclusions of law may be reviewed to
determine their correctness based upon the facts. Rogers v. City of Fort
Worth, 89 S.W.3d 265, 277 (Tex. App.--Fort Worth 2002, no pet.); Forbis
v. Trinity Universal Ins. Co., 833 S.W.2d 316, 319 (Tex. App.--Fort Worth
1992, writ dism'd).
Notice and Opportunity
to Cure
In his first two issues, Powell
contends that the trial court erred in concluding that "[a]ll required
notices to . . . Powell were given in accordance with law" and that Powell
"was given a required statutory notice of default and opportunity to
cure." Section 51.002(d) of the Texas Property Code provides:

        
 Notwithstanding any agreement to the contrary, the holder of the debt shall
 serve a debtor in default under a deed of trust or other contract lien on real
 property used as the debtor's residence with written notice by certified mail
 stating that the debtor is in default under the deed of trust or other
 contract lien and giving the debtor at least 20 days to cure the default
 before notice of sale can be given under Subsection (b). The entire calendar
 day on which the notice . . . is given, regardless of the time of day at which
 the notice is given, is included in computing the 20-day notice period . . . ,
 and the entire calendar day on which notice of sale is given under Subsection
 (b) is excluded in computing the 20-day notice period.

Tex. Prop. Code Ann. § 51.002(d).
The May 31, 2000 letter was sent by
certified mail and signed for by Powell. The letter indicated that Powell and
Milton had twenty-one days from the date of the letter in which to cure the
default. Notice of acceleration and foreclosure was not given until November 6,
2000. Thus, Powell and Milton had one hundred fifty-nine days in which to cure
any default before the entire amount of the debt became due.
Powell contends that he was denied
an opportunity to cure because the May 31 letter specifically stated that
payment arrangements could be made by contacting the Stacys' attorney, and the
Stacys failed to adhere to this "express representation" by not
responding to his attorney's attempts to clarify the total amount of outstanding
principal due on the note. However, Powell admitted that he did not sign any
checks for payments on the note after April 2000.(1)
Additionally, the letter from Powell's attorney inquired only about the payoff
amount of the loan and the total amount of principal the Stacys claimed was due;
it did not dispute that Powell and Milton were in default. Powell and Milton had
the opportunity to cure the default before acceleration of the debt by paying
the installment payments due from April to November 2000; the fact that there
may have been a dispute about the total amount of outstanding principal and
interest due on the note before acceleration did not excuse Powell and Milton
from making payments on the note from April to November 2000.(2)
Powell also claims that the Stacys owed him a duty of good faith and fair
dealing and that they breached that duty by (a) sending a default notice that
listed an excessive amount of principal and usurious amount of interest and (b)
not responding to his requests to clarify the amounts due under the note. Powell
claims that because these actions were taken in connection with the note rather
than the deed of trust, the good faith standard set forth in the Texas Uniform
Commercial Code applies. See Tex. Bus. & Com. Code Ann. § 1.203
(Vernon 1994) (imposing a good faith obligation in the performance of contracts
and duties governed by the code); see also id. § 3.104 (Vernon 2002)
(defining "negotiable instrument").
Even if the Stacys owed Powell a
duty of good faith and fair dealing by virtue of the fact that the May 31 letter
related to the enforcement of a negotiable instrument, which we do not decide
here(3), Powell has presented no evidence that
the Stacys breached that duty. The note Powell and Milton signed waived the
right to notice of intent to accelerate and notice of acceleration; therefore,
they were not entitled to notice. See Shumway v. Horizon Credit Corp.,
801 S.W.2d 890, 893 (Tex. 1991). Thus, the only required notice was the section
51.002 notice, which was necessary because Powell was using the property as his
residence. Tex. Prop. Code Ann. § 51.002(d). The May 31 letter contained all
the information required by section 51.002, which does not require the note
holder to include the amount that would be due after acceleration. Furthermore,
the only evidence explaining why the incorrect amount was included in the letter
is that the Stacys' attorney made a mistake in calculating the total principal
and interest due on the note; there is no evidence that the Stacys or their
attorney acted dishonestly. See Tex. Bus. & Com. Code Ann. §
1.201(19) (Vernon Supp. 2003) (defining good faith as "honesty in fact in
the conduct or transaction concerned"); Coleman, 795 S.W.2d at
708.
Powell further contends that the
notices were not given in accordance with the statute because the substitute
trustee violated his duty of fairness and impartiality. When exercising a power
in a deed of trust, the trustee becomes a special agent for both parties, and he
must act with absolute impartiality and with fairness to all concerned in
conducting a foreclosure. Hammonds v. Holmes, 559 S.W.2d 345, 347 (Tex.
1977); Stephenson v. LaBoeuf, 16 S.W.3d 829, 837 (Tex. App.--Houston
[14th Dist.] 2000, pet. denied) (op. on reh'g). The trustee must
conduct the foreclosure sale fairly and not discourage bidding by acts or
statements made before or during the sale; however, the trustee has no duty to
take affirmative actions beyond that required by statute or the deed of trust to
ensure a fair sale. Peterson v. Black, 980 S.W.2d 818, 822 (Tex.
App.--San Antonio 1998, no pet.). A trustee's duties are fulfilled by strictly
complying with the terms of the deed of trust. Id.; First State
Bank v. Keilman, 851 S.W.2d 914, 925 (Tex. App.--Austin 1993, writ denied)
(op. on reh'g).
In this case, the substitute
trustee abided by the terms of the deed of trust and section 51.002. The fact
that he was also representing the Stacys does not show that he breached his duty
of fairness and impartiality. Thus, we overrule Powell's first two issues.
Inadequacy of
Consideration and Regularity of Sale
In his third through fifth issues,
Powell claims that the trial court erred (a) in concluding that a valid
foreclosure sale was conducted on December 5, 2000 and (b) in rendering judgment
for the Stacys, thus implicitly concluding that the sale was legally and fairly
made and was not void as a result of any inadequacy of consideration combined
with irregularities in the sale. Powell addresses these issues in a single,
integrated argument; thus, we will combine our discussion of these three issues.
According to Powell, the Stacys'
bid was far less than the fair market value of the property. Powell claims that
this inadequacy of consideration, coupled with irregularities in the sale,
rendered the foreclosure void. Powell contends the sale was irregular because
(1) he did not receive adequate notice of the sale nor an opportunity to cure,
(2) the Stacys did not send his attorney a copy of the notice of foreclosure,
and (3) the notice of foreclosure contained a statement of excessive principal
and usurious interest.
Inadequacy of consideration does
not render a foreclosure sale void if the sale was legally and fairly made. Am.
Sav. & Loan Ass'n v. Musick, 531 S.W.2d 581, 587 (Tex. 1975); Tarrant
Sav. Ass'n v. Lucky Homes, Inc., 390 S.W.2d 473, 475 (Tex. 1965); Sanders
v. Shelton, 970 S.W.2d 721, 726 (Tex. App.--Austin 1998, pet. denied).
There must also be evidence of some irregularity, though slight, that caused or
contributed to the sale for a grossly inadequate price. Musick, 531
S.W.2d at 587; Sanders, 970 S.W.2d at 726. The trial court found that
the Stacys bid $55,000 for the property, but within the six months prior to the
sale, someone had offered to purchase the property for $200,000. However, the
trial court did not conclude that the consideration paid by the Stacys was
inadequate.
The threshold issue is whether
there were any irregularities in the sale and if so, whether there is proof that
those irregularities caused a sale at a grossly inadequate price. See
Charter Nat'l Bank-Houston v. Stevens, 781 S.W.2d 368, 372 (Tex.
App.--Houston [14th Dist.] 1989, pet. denied) (interpreting the
supreme court's holding in Musick). We have already determined that the
Stacys complied with section 51.002(d) of the property code by giving Powell the
required notice and an opportunity to cure. Accordingly, neither the incorrect
statement of principal and interest in the May 31 letter, nor the Stacys'
failure to respond to Powell's attorney's inquiries constitute an irregularity
in the sale. In addition, we find no authority requiring the substitute trustee
to send notice of foreclosure to the debtor's attorney. See Tex. Prop.
Code Ann. § 51.002(b); cf. Tex. R. Civ. P. 647 (requiring sheriff to
give notice of sheriff's sale to either judgment debtor or his or her attorney);
Apex Fin. Corp. v. Brown, 7 S.W.3d 820, 828 (Tex. App.--Texarkana 1999,
no pet.) (holding that failure to give notice to judgment debtor or judgment
debtor's attorney under rule 647 is an irregularity). Thus, we hold that the
Stacys' failure to give notice to Powell's attorney does not constitute an
irregularity in the sale.
Powell further contends that the
incorrect statement of principal and interest contained in the notice of
foreclosure is an irregularity that caused the property to be sold at a grossly
inadequate price. The notice of foreclosure showed the outstanding balance on
the note as "$47,400.89 . . ., being principal and interest in the
following amounts: $47,396.91 of principal and $21,943.24 of interest. The note
is bearing interest at the rate of $19.00 per day thereafter."
A trustee owes no duty to provide
either the debtor or any potential bidders at the foreclosure sale any
information about the payoff amount of the underlying obligation. Sanders,
970 S.W.2d at 726. Nevertheless, Powell avers that the misinformation skewed the
foreclosure process and led to an unfair sale because it increased the inherent
disadvantage to third party bidders in a foreclosure sale: that the third party
bidder must bid cash while the mortgagee need only bid "credit"
against the amount due on the note. Powell argues that the overstatement of the
amount due on the note discouraged third party bidders who may have bid on the
property had they known the Stacys' credit was less than what was listed in the
foreclosure notice. According to Powell, third party bidders may have believed
that the Stacys could bid credit up to $72,500.
Again, Powell has failed to show
that the error was anything other than a mistake. In addition, we disagree with
his contention that the irregularity could have caused a grossly inadequate
price to be paid for the property. The Stacys bid $55,000, more than the total
amount owed on the note. Powell complains that this price is lower than the
property's fair market value, which is approximately $200,000. But if third
party bidders were discouraged from bidding against a possible credit of
$72,500, as Powell claims, then the logical conclusion is that they would not
have been prepared to bid cash in an amount close to $200,000, the property's
claimed value.
Our review of the evidence shows
that, while the notices prepared by the Stacys' attorney in connection with the
default and subsequent foreclosure contained errors, and the property may have
been sold at the foreclosure sale for less than its approximate fair market
value, the foreclosure sale was conducted in compliance with the deed of trust
and section 51.002 of the property code. Tex. Prop. Code Ann. § 51.002. Thus,
we overrule Powell's third through fifth issues.
Conclusion
Having overruled Powell's five
issues, we affirm the trial court's judgment.
 
                                                                       
TERRIE LIVINGSTON
                                                                       
JUSTICE
 
PANEL B: DAY, LIVINGSTON, and
WALKER, JJ.
DELIVERED: July 24, 2003

1. All business checks required both Powell's and Milton's
signatures.
2. Although the trial court did conclude that Powell's
failure to "tender the amount of the debt owed is excused," this
conclusion appears to be in response to the Stacys' contention that Powell
cannot obtain relief because he failed to tender all amounts due under the note
to the trial court. See Lambert v. First Nat'l Bank, 993 S.W.2d 833,
835-36 (Tex. App.--Fort Worth 1999, pet. denied) (holding that in order to be
entitled to recission of a void foreclosure sale, plaintiff must tender all
amounts due under the note).
3. The duty of good faith and fair dealing is ordinarily
not imposed on the mortgagor/mortgagee relationship. FDIC v. Coleman,
795 S.W.2d 706, 709 (Tex. 1990).